JOHN TANT, RESPONDENT, v. E. B. GEE, APPELLANT.—146 S. W. (2d) 61.

Springfield Court of Appeals.   December 31, 1940.

*R. F. Baynes* for appellant.

134

*Ward & Reeves* and *Merrill Spitler* for respondent.

136

TATLOW, P. J.—This is a suit for specific performance of a contract for the sale of real estate. The respondent was the plaintiff below and the appellant was the defendant. The parties will be referred to hereinafter as plaintiff and defendant.

The plaintiff's petition alleges that the defendant agreed to sell and convey to him the West One-half of the Northwest Quarter of Section Two, Township Twenty, Range Eleven, under the terms and conditions set forth in the written contract copied in the petition.

Plaintiff also alleges, among other things, as follows: "Plaintiff further states that at the time of the making of the aforesaid land sale contract, the defendant and the plaintiff entered into an agreement and contract by the terms of which the plaintiff was employed as agent to find a purchaser and make sale for the defendant of lands located in New Madrid County. . . . . . . plaintiff, as agent of the defendant, procured a purchaser, one Reuben Hatley, on or about November 12, 1935, for the Northwest Quarter of the Southwest Quarter of Section Two (2), Township Twenty (20), North, Range Eleven (11), East, in New Madrid County, and for which the plaintiff earned and is entitled under his contract with the defendant a commission of $1.00 per acre, or $40.00; . . ."

Plaintiff then alleges that, in December, 1936, in pursuance of said agency contract and agreement, he found and secured a purchaser, one N. W. Clark, for 320 acres of said land, for which plaintiff earned and is entitled to the sum of $2 per acre, or $640, as commissions; that in pursuance of said agency contract he found and secured a purchaser, one Hugh A. Tistadt (in 1935) for 320 acres of said land, for which he earned and is entitled to the sum of $2 per acre, or $640, as commissions, making the total amount and sum so earned and due plaintiff as commissions in the sale of said lands for the defendant, $1,320; that by the terms of said agency agreement between the plaintiff and defendant, it was agreed and stipulated that the amounts on the plaintiff's commissions should and would be credited as and when the defendant made cash collections from the respective purchasers of said lands, and that the defendant has long since made said cash collections from the purchasers of said real estate, or he has voluntarily and negligently failed to collect same or waived such cash payments, though he had ample security in the way of notes and mortgages on the crops grown on said lands by said pur-

chasers, and if the defendant did not make such cash collections he did not act in good faith, and neglected and failed to collect same as a further inducement to the purchasers of said lands to clear same and make valuable improvements thereon to the advantage and enrichment of the defendant, etc.

The above outline contains a sufficient epitome of the petition to indicate its general character.

The prayer of the petition is as follows: "Wherefore, plaintiff prays a decree that the court make an accounting that the amount due by plaintiff to the defendant be ascertained, and that the defendant be directed to convey by a proper warranty deed the said premises so purchased by the plaintiff from the defendant upon payment to the defendant of the amount so ascertained by the court, and for such other, further and general relief to which the plaintiff may be entitled."

Defendant's first amended answer to plaintiff's petition in the cause admitted that he entered into the contract of sale with plaintiff as alleged and set out in plaintiff's petition; admitted that the plaintiff entered into a contract, under the terms of which defendant was to pay plaintiff certain commissions for the sale of certan lands under certain conditions, which contract is then copied in full, and both of which contracts bear date November 12, 1935; denies that plaintiff ever sold or found a purchaser for any of defendant's land entitling him to any commission whatsoever under the terms of the agreement aforesaid; and concludes as follows: "Wherefore, Defendant, having fully answered, prays that the court order the contract of purchase entered into by plaintiff, as set out in plaintiff's petition, be ordered rescinded and for such further orders and judgments as to the court may seem meet and proper in the premises."

The court finds in its decree that the total amount of the purchase price, with interest, was $2,735.58; that the credits to which plaintiff was entitled on account of the sales to Clark and Tistadt amounted to $1,385.03, leaving as the amount still due on the contract the sum of $1,350.55; and concludes its decree as follows:

"Wherefore, it is adjudged and decreed by the court that upon the payment by the plaintiff to the defendant, or into this court for the defendant, the sum found to be due as aforesaid, that is, the sum of $1350.55, the defendant is directed and ordered to make and deliver to the plaintiff a good and sufficient warranty deed conveying the land described above, free and clear of all taxes for the year 1935 and prior years, and the plaintiff is given and allowed by the court thirty days from this date to make such payment, and if same is made as herein required and said warranty deed is not made and delivered as herein directed, then all right, title and interest of the defendant will be forever divested out of the defendant and vested in the plaintiff to the land above described, and that defendant will be forever

precluded and estopped from claiming or asserting any title or interest in said land.

"It is further ordered and decreed that the costs herein be taxed against the defendant."

The defendant makes five assignments of error in this court, the substance of all of which are contained in the 5th Assignment, as follows: "5. The Court erred in its decree in not requiring plaintiff to pay to defendant the sum of $2735.58, plus taxes paid by defendant, before decreeing that defendant should execute deed."

Hence, it is apparent that the actual controversy between the parties is whether the plaintiff, as found by the court and established by its decree, is only required to pay the defendant the sum of $1,350.55, to entitle him to a deed for the land purchased by plaintiff, or whether the plaintiff should have been required to pay the defendant the sum of $2,735.58 and taxes, as claimed by defendant, before plaintiff was entitled to a deed to the land purchased.

## I.

If this case involves the title to real estate within the meaning of Section 12 of Article VI of our Constitution, then this court has no jurisdiction of the case, but the jurisdiction is in the Supreme Court, and, under Section 1915, Revised Statutes 1929, it is the duty of this court to transfer the case to the Supreme Court. If we do not have jurisdiction of the case we should not pass upon the merits. [Stark v. Martin, 204 Mo. 433, 439, 102 S. W. 1089.] Jurisdiction can neither be waived nor conferred by consent of parties. This has been decided by our Supreme Court in numerous cases. [Higgins et al. v. Smith et al. (Banc, Mo.), 144 S. W. (2d) 149, 151.] Whether challenged or not, it is our duty to determine that we have jurisdiction of the case before attempting to decide it on the merits. [Murphy et al. v. Hurlbut Undertaking & Embalming Co. (Mo. Sup. Division 1), 142 S. W. (2d) 449, 450, and cases cited.]

The last ruling of our Supreme Court, en banc, involving this question, that has come to our attention, is State ex rel. Brown v. Hughes, 345 Mo. 958, 137 S. W. (2d) 544. This case is a direct holding that the instant case involves the title to real estate within the meaning of the Constitutional provision, *supra*. It was an ejectment suit, which was originally appealed to the Supreme Court. The parties in that case filed in the Supreme Court a stipulation asking the court to transfer the cause to the St. Louis Court of Appeals, because title to real estate was not involved. The court acted on the stipulation and transferred the case to the Court of Appeals. The Court of Appeals heard and decided the case (which is reported in Brown v. Wilson, 131 S. W. (2d) 848). The plaintiff, after losing the case, procured a writ of *certiorari* on the ground that the title to real estate was involved. As said by the court in that case (345 Mo. 961, 137 S. W. (2d) 545):

"Relatrix's petition in circuit court was in conventional form, alleging that she was the owner in fee simple of the land in question, that she was entitled to possession, and that the defendant was wrongfully withholding the possession thereof from her. The petition did not ask that title to the land be determined. Defendant's answer was a denial that relatrix was the owner in fee simple and that defendant was unlawfully withholding possession thereof from relatrix and further alleged that he had purchased the land from his predecessors in title as shown by a deed dated March 26, 1918. He also claimed title through adverse possession. He did not ask the court to determine title.

"Therefore, under the pleadings the judgment sought did not involve title within the meaning of the Constitution. We have ruled that 'cases involving title to real estate within the meaning of the Constitutional provision fixing our jurisdiction are cases in which the judgment *sought or rendered* will directly affect or operate upon the title itself. In cases where neither party asks that title be adjudicated, yet it is necessary for the court to ascertain which party has title in order to render the judgment asked for by the pleadings, the title is incidentally or collaterally and not directly involved, and for that reason we would not have jurisdiction in such a case.' (Italics ours.) [Ballenger v. Windes, 338 Mo. 1039, 93 S. W. (2d) 882, l. c. 883. See, also, Gibbany v. Walker, 342 Mo. 156, 113 S. W. (2d) 792; Federal Land Bank v. Bross (Mo.), 116 S. W. (2d) 6; Frederich v. Tobaben (Mo.), 117 S. W. (2d) 251; Wakefield et al. v. Dinger et al. (Mo.), 130 S. W. (2d) 490.]

"The test of whether or not title to real estate is directly involved has been stated as follows: ' "The judgment sought or rendered must be such as will directly determine title in some measure or degree adversely to one litigant and in favor of another; or, as some of the cases say, must take title from one litigant and give it to another." ' [Gibbany v. Walker, 342 Mo. 156, 113 S. W. (2d) 792, l. c. 793; Nettleton Bank v. McGauhey's Estate, 318 Mo. 948, 2 S. W. (2d) 771; Ballenger v. Windes, *supra*.]" ·

In the instant case the title to the land in controversy was in the defendant. There was no dispute or controversy concerning that fact. Neither is there any possible escape from the conclusion that the decree both sought and rendered takes the title from the defendant and gives it to the plaintiff by divesting the title out of the defendant when he is paid the amount by the plaintiff that the court finds is due as the balance of the purchase price, and vests the title in the plaintiff.

The court in that case further says:

"In the judgment of the circuit court we find the following language: 'Wherefore, it is Considered, Ordered and Adjudged by the court that defendant is the owner of and entitled to possession of the

140

above described real estate, and that plaintiff has no interest in said real estate, and that all costs herein be taxed against the plaintiff.'

"We therefore conclude that the judgment rendered in this case does directly involved title to real estate as it takes away title from relatrix (plaintiff) and gives title to defendant. This is so, even if the judgment is broader than the pleadings in this case.

" 'If the judgment *rendered* determine title, that is sufficient to classify the controversy, and title is involved in the constitutional sense, regardless of whether or not the pleadings are broad enough to sustain the judgment (citing cases).' "

In the instant case there is no possible escape from the conclusion that the judgment, as sought and as in fact rendered, takes the title out of the defendant and vests it in the plaintiff, upon the payment of the amount found due on the purchase price. The only possible theory upon which it can be held that the instant case does not involve the title to real estate is that all that was in controversy was the amount of the purchase price remaining unpaid—that is, whether it was $1,350.55, as found and decreed by the court, or whether it should have been $1,735.58, and taxes, as claimed by the defendant in his 5th Assignment of Error. The fact still remains that the decree actually divests the title out of the defendant and vests it in the plaintiff upon the payment of the amount of the purchase price which the court finds due, and brings the instant case directly within the decision in the case of State ex rel. Brown v. Hughes, *supra.*

The still later case of Ashauer v. Peer (Mo.), 139 S. W. (2d) 991, is a case in which the court was called upon to construe the deeds of adjoining landowners so as to determine and fix the dividing line, and it was held that the case did not involve the title to real estate, the court, among other things, saying: "In the present case the construction of the description in the deeds is not incidental to some other question, it is the only question. If plaintiff had brought suit to determine title, and had described the land in the petition as it would be described if the dividing line runs as she claims, and had asked that title be determined to that description, then title would be involved, but no such case as suggested is here. . . ." [139 S. W. (2d) l. c. 993.]

Observe that the identical issue that was in fact determined in that case would have been determined in the assumed case, as the sole basis for determining the title, which would have given the Supreme Court jurisdiction.

In the instant case the petition, of necessity, required, if the plaintiff prevailed, divesting title out of the defendant and vesting it in the plaintiff, and, in addition thereto, such is the legal effect of the decree in the instant case.

In the still more recent case of Higgins v. Smith (Mo.), 144 S. W. (2d) 149, l. c. 151, the court, en banc, again deals with the question

of its jurisdiction—not whether the title to real estate was involved, but as to the amount involved—and says: ". . . This court has jurisdiction over the contest of a will involving title to real estate. [State ex rel. Pemberton v. Shain (Banc), 344 Mo. 15, 18, 124 S. W. (2d) 1087, 1088, and cases cited. . . .]

In a will contest the issue in fact decided is not the question of title to the real estate where the will purports to convey real estate. The title confessedly was in the testator at the time of his death, which the contest seeks to leave in the heirs at law for the sole reason that the testator either did not have testimentary capacity to make a will or was unduly influenced so that the paper purporting to be his will is not, in fact, his will. If the contest is successful it destroys the will as a muniment of title and leaves the title vested in the heirs at law. If the contest is unsuccessful it establishes the will as a muniment of title. In neither case is the question of title the *issue* in the case. The title stands conceded in the testator at the time of his death. Whichever way it is decided, the judgment, although it does not involve the issue of title, necessarily and directly affects the title just as it does in the instant case.

In many title contests the title turns on a question of fact *dehors* a deed or other written instrument. Perhaps there are more of such cases than there are cases where the title turns on the construction of a deed or written instrument, or whether it is legally sufficient to convey title. In the case of Brown v. Wilson (Mo. App.), 131 S. W. (2d) 848, which the Supreme Court quashed, the sole issue was one of fact—whether the river (which was the boundary line) had suddenly changed so as to lose its identity as the dividing line; whether it had changed gradually and imperceptibly so that the rule of accretion applied; or whether, under the fact, the Statute of Limitations applied.

Under the authorities, *supra,* the question in *issue* which determines who has the title, is not the controlling question in determining whether the *decree* directly affects the title. If it does, title is involved within the meaning of the Constitution, even though the paper title is not the issue in controversy.

Under the cases *supra* we are unable to come to any other conclusion after carefully considering the question, than that this court does not have jurisdiction of this case and that the jurisdiction is in the Supreme Court. The case should, therefore, be and is transferred to the Supreme Court for final determination, and the clerk of this court is ordered and directed to transmit the record in this case to the Supreme Court.

It is so ordered. *Smith* and *Fulbright, JJ.,* concur.