Marie McQUATE, Respondent,

v.

Naomi WHITE, Individually, and as Co-Executrix of the Estate of Chester A. McQuate, Naomi White, Guardian of Sonya White, Yana White, Lisa White and Eric White, Elizabeth Christopher, Individually and Co-Executrix of the Estate of Chester A. McQuate, Walter B. Christopher, Legal Guardian of Lorna Christopher and Glen Christopher, Appellants.

No. 50700.

Supreme Court of Missouri,

Division No. 2.

April 12, 1965.

Sevier & Turnage, Robert F. Sevier, William E. Turnage, Liberty, for plaintiff-respondent.

Robert H. Frost, G. Raymond Speckman, Plattsburg, Derrick & Holderle and Tyree C. Derrick, St. Louis, for appellants.

EAGER, Judge.

Plaintiff, widow of Chester A. McQuate, filed suit seeking a declaration that a marriage agreement entered into on November 17, 1954, be declared void, that the record thereof be expunged, and that she be declared to have the same interest in two described tracts of real estate as she would otherwise have had. The husband died on September 11, 1961, and his will was duly probated. Plaintiff, on May 23, 1962, filed her election to renounce the will and take her "legal share" of his estate. The trial court entered a judgment finding generally that the contract should be set aside, and it ordered, adjudged and declared that it be "set aside and for naught held." Motions for judgment and a new trial were filed and overruled. After an untimely notice of appeal was filed in the Circuit Court, this Court granted a special order allowing a notice to be filed and it was filed. The defendants are the executrices, the two daughters of the deceased, and the guardians of his grandchildren who were the devisees of the two principal tracts of the controverted real estate.

The "marriage contract" recited that each party was possessed of property, had made full and frank disclosure to the other, and had been advised of his or her legal rights; the expressed considerations, pro and con, were one dollar and other "good and sufficient and satisfactory consideration." By the terms of the contract the husband agreed that the wife (plaintiff) should own, hold and enjoy all of her present and future property as her separate and sole estate with the full right to convey or mortgage it or to dispose of it by will, and that he thereby released to her and her heirs, representatives, assigns, legatees and devisees all rights and claims thereto which he might have by reason of the marriage; for the identical expressed considerations, the wife made the same agreements and the same release with reference (only) to two specifically described tracts of real estate owned by the husband; from the descriptions one would appear to have consisted of 240 acres and the other of 80 acres, located in different sections. Each party agreed that if it should be deemed necessary he or she would execute any documents required to carry out the terms of the contract.

Plaintiff's second amended petition sought a declaration of invalidity upon the following grounds: that she had been induced to sign the agreement by false and fraudulent representations of the decedent as to the value of the real estate and also that it was not necessary for her to consult with counsel; that she was then possessed only of personal property of the value of approximately $6,000, whereas the real estate in question was of the value of $65,000; that she already had, in law, the full right to deal with her own property and that she acquired nothing by virtue of the agreement, in fact, not even the one dollar mentioned or any other recited "satisfactory considerations"; that the agreement was executory and unilateral, and wholly void. The defendant bank was made a party because it admittedly

held one or more deeds of trust on the real estate. Plaintiff also alleged: that subsequent to date of the marriage and without prior discussion she had been taken by decedent to the office of an attorney where the marriage agreement was signed; that no benefit had accrued to her under the agreement; that by the will of decedent she was given less than her statutory share of the estate and that she had filed her election to renounce the will and claim a one-third interest in all the real and personal property.

The answers admitted the formal allegations of the petition and denied all substantive allegations. It will not be necessary to further detail the pleadings, except to say that the defendant bank alleged that it held liens evidenced by two recorded deeds of trust with an aggregate balance of $51,467.-12 as of September 1, 1963. No one disputes the bank's claim.

The evidence was very incomplete, due in large part to the fact that all proposed testimony of the plaintiff was excluded under the Dead Man's Statute, § 491.010, RSMo 1959, V.A.M.S.; thus, she was not permitted to give any testimony concerning the extent of her property at the time of the contract. By the will of the decedent, filed for probate on September 15, 1961, decedent devised to plaintiff a 77-acre tract (being one of those described in the contract) and all personal property, the latter being subject to all debts, claims, expenses and "real estate mortgages." One tract of 240 acres, described as the "Home Place" and covered by the marriage contract, was devised to the White grandchildren; another tract of 240 acres, apparently acquired later, was devised to the Christopher grandchildren. We are not interested in the other provisions, except perhaps that the testator ordered that his personal property be sold at auction. Two applications for letters testamentary were introduced, the second supplying the names of some of the legatees; these estimated the value of decedent's real property at $87,500, and of his personal property at $40,000, and recited that decedent died on September 11, 1961, at the age of 71. Let-

ters were issued on September 15, 1961. The inventory was objected to as constituting no evidence of values at the time of the contract, but it was received and we think properly so. It had some relevancy in the attempt to arrive at an estimate of the value of deceased's property at that time. Egger v. Egger, 225 Mo. 116, 123 S.W. 928, loc. cit. 935. The inventory listed three tracts of real estate, appraised the 77-acre tract at $8,855, and the two 240-acre tracts at $48,-000 and $65,000, respectively, all subject to a balance due under deed of trust of $51,-311.36, leaving a net value for the real estate of $69,543.64. The listed personal property was appraised at $96,176.80, much of it consisting of livestock and farm machinery. There was no evidence concerning other debts, claims or expenses.

The marriage agreement had been recorded and the record was offered and received in evidence. There was some oral evidence concerning the real estate values; it is a little difficult to evaluate this, because of the somewhat indefinite references to the specific tracts. It reasonably appears, however, that the tract of 77 acres devised to plaintiff and mentioned in the contract, was thus valued at $15,400, and the "Home Place" 240 acres at from $48,000 to $50,400, all as of 1954. As to the other 240 acres, presumably acquired later, we have only the inventory appraisement of $48,000. The defendants stood upon an oral motion to dismiss and offered no evidence.

■ The first point of plaintiff's brief consists of a motion to dismiss the appeal under Rule 83.05, V.A.M.R. for insufficiency of the jurisdictional statement and of the statement of facts, and also because the Points asserted are merely abstract statements of law. We have examined the brief in the light of these contentions and do not find the deficiencies to be of sufficient moment to justify a dismissal. The Appellants' Points and Authorities are not models, but they do affirm in varying language the contentions that the marriage contract was fair on its face and was supported by consideration, and that there was no evidence

to support the judgment which, consequently, was rendered erroneously. There was and is only one ruling from which the defendants thus appealed, namely, the judgment invalidating the contract. No party requested findings of fact or conclusions of law; the case was, by its very nature, in equity. There being but a "single obvious question" in the case, the motion is overruled. Milanko v. Austin, 362 Mo. 357, 241 S.W.2d 881, 882, cert. denied 342 U.S. 906, 72 S.Ct. 298, 96 L.Ed. 678; Bringer v. Barr, Mo.App., 318 S.W.2d 524, 527. And see generally Ellis v. Farmer, Mo., 287 S.W.2d 840, 843.

▮ Plaintiff's counsel next assert that there is no jurisdiction in this Court because the title to real estate is not directly involved. This question is frequently troublesome. It was recently well stated in the case of In Re Schell's Estate, Mo.App., 370 S.W.2d 816, loc. cit. 818: "We approach the question of jurisdiction with the view that in order to vest jurisdiction in the supreme court the judgment sought or the judgment rendered must affect or operate upon the title in the sense that some interest or moiety therein is denied to one and placed in another. The title must be directly in controversy. It is not sufficient that, in determining the issue involved, the court may incidentally or collaterally find it necessary to decide the question of title in order to arrive at a correct conclusion as to the question which is directly at issue." In the present case plaintiff seeks a declaration that she is entitled to an undivided interest in all of the decedent's real estate. The Court made no such declaration, but the issue was within the pleadings. It was and is obvious that if plaintiff should be adjudged to be the owner of an undivided one-third of any of the real estate, the devisees of that part would receive one-third less. On this point counsel cite In Re Ellis' Estate, Mo., 127 S.W.2d 441, and First National Bank of Kansas City v. Schaake, 355 Mo. 1196, 200 S.W.2d 326. Both of those cases involved actions by the guardians of insane widows

seeking the courts' advice as to whether they should renounce the wills or take under them. The court in Ellis held that the only question actually involved was the advisability of making such an election, that the will was not being questioned, and that the case was unlike a will contest; that consequently there was no contest concerning the title. In Schaake, the court merely followed the Ellis case upon substantially similar facts. While we have found no case precisely on the present facts, and are cited to none, we conclude that the principle of the will contest cases is applicable. Here the contract and the will described specific real estate and two of the tracts were included in both; the plaintiff had renounced the will; she seeks to set aside the marriage contract and to be declared the owner of a statutory share in all property, real and personal. Under the terms of the marriage contract she is barred from doing so; essentially, she is asking that this *bar* be removed (more or less the reverse of declaring a will invalid) and that her right of election be freed to take under the will or to renounce it. In Ray v. Nethery, Mo., 255 S.W.2d 817, the plaintiff filed suit seeking a declaration that he qualified as the beneficiary of the residuary clause of a decedent's will, which bequeathed the property to the person or persons who took care of her in the future. The defendants were decedent's heirs and the administratrix with the will annexed. The court there said, in part, loc. cit. 819: "It seems quite clear, therefore, that this suit by which plaintiff sought to have the will declared operative as to him and to invest title to all of the real estate in him and by which he recovered a judgment investing him with an undivided two-thirds interest therein, thereby divesting to that extent the interest to which defendants as Mrs. Lee's heirs would have succeeded but for the will becoming operative, directly involves title to real estate within the meaning of Section 3, Article V, of the Constitution of Missouri, V.A.M.S., which defines our jurisdiction. Nettleton Bank v. McGauhey's Estate, 318 Mo. 948, 2

S.W.2d 771; State ex rel. Pemberton v. Shain, 344 Mo. 15, 124 S.W.2d 1087. See also Love v. White, Mo.App., 150 S.W.2d 494; Id., 348 Mo. 640, 154 S.W.2d 759.

"Moreover, the petition herein prayed that plaintiff 'take all of the property, real, personal or mixed, of the said Nettie Lee, deceased, as in her last will and testament provided'; and the judgment rendered declared that plaintiff be 'vested with an undivided two-thirds interest in and to the real estate of testatrix'. Our decisions are clear that where the judgment sought would take or the judgment rendered does take title to real estate from one party and invest it in another jurisdiction of the appeal lies in this court. * * * That is precisely what the judgment sought and the judgment rendered in this case did." See also Smith v. Kemp, Mo., 353 S.W.2d 721. In Hemphill v. Hemphill, Mo., 316 S.W.2d 582, action was brought by the guardian of an insane wife, a resident of Oklahoma, for declarations that a decree of divorce obtained by her deceased husband was void and that she was his lawful widow, and for a decree establishing her interest in his real estate. The court there said, loc. cit. 584: "Since the petition sought an adjudication as to the interests of the parties in certain real estate, we have appellate jurisdiction." In sundry other will contest cases we have affirmed our jurisdiction. While the judgment actually entered here made no express adjudication of title, we hold, nevertheless, that we have jurisdiction.

On the merits, the position of the appellants is: that clear, cogent and convincing proof is necessary to invalidate an instrument such as the one involved here; that this agreement is fair on its face, that it recites an adequate consideration and full disclosure of the facts, that the mutual promises constituted a good and actual consideration, that there was absolutely no evidence of fraud or lack of consideration, and that the judgment is wholly without support in the evidence. The plaintiff insists that it was shown by the evidence that the agreement was not supported by any valid consideration, that it was not "fair, reasonable and just," and that, on its face, it did not constitute an unequivocal release of plaintiff's marital rights.

Before discussing the authorities, we note that the last mentioned contention of the plaintiff is unsound; it is apparently based on the fact that there was no express mention in the contract of Mr. McQuate's "estate." It does, however, contain an express release by the plaintiff to Mr. McQuate "his heirs, legal representatives, assigns, legatees, and devisees" of all and every "right, claim and estate, actual, inchoate, or contingent" of every kind and character in, to, or upon the described real estate by reason of plaintiff being or having been Mr. McQuate's wife. The agreement could hardly have been more specific in releasing all her claims to the real estate in the hands of the heirs or legatees. The case of In Re Woods Estate, 288 Mo. 588, 232 S.W. 671, is not in point; in that agreement there were no provisions similar to those involved here and just referred to above; the court construed that contract as merely an agreement for support during the separation of the parties, with the right granted to each party to deal freely with his or her own property, and with an agreement by the wife to execute deeds or mortgages when requested, thus releasing dower in specific real estate. The terms of that contract and of the present one are in no manner comparable. It was properly held there that there was no unequivocal release by the wife of her interest in the husband's estate.

The Missouri cases recognize generally the validity of postnuptial property settlements, provided: there is consideration; the intention of the parties is clearly expressed; and the agreement is fair and just. Woods, supra; Hall v. Greenwell, 231 Mo.App. 1093, 85 S.W.2d 150; Glauert v. Huning, Mo., 290 S.W.2d 126; Clark v. Clark, Mo.App., 228 S.W.2d 828. However, the courts look upon such contracts with considerable strictness where there is any

indication that the wife has been imposed upon. Woods, 232 S.W. loc. cit. 676. We note here that the present contract did not purport to be a complete property settlement between the parties. It constituted an agreement that the wife could deal freely with her own property, that the husband could deal freely with the described tracts of real estate, that the husband released his rights in the wife's property, *and* that the wife released all her rights and interest in the two specific tracts of real estate. The wife was later devised the smaller and less valuable of these two tracts, along with the personal property subject to all debts, secured and otherwise, expenses and claims. She has seen fit to renounce the will. Appellants' counsel argue that obviously the net value of the estate is less than $65,000, but this (on the present record) is pure speculation.

We cannot disregard the fact that the husband's full release of all interest in the wife's property, effective to her and to her heirs, legal representatives, assigns, legatees and devisees, constituted a consideration. It was so held in Hall v. Greenwell, 231 Mo.App. 1093, 85 S.W.2d 150. It is true that in the latter case the respective property valuations were accurately shown and were found to be somewhere nearly equal. In our case there is no specific showing, though all assume that plaintiff had some personal property. We are unable to say that there was a complete absence of consideration. In Glauert v. Huning, Mo., 290 S.W.2d 126, at loc. cit. 131–132, the court said: "A husband and wife may mutually agree to the disposition of their property and if they abide by that agreement, it is binding on their heirs or devisees. Such an agreement constitutes sufficient consideration to support the contract. See 41 C.J.S., Husband and Wife, § 89, p. 562, and § 91, p. 564; Hall v. Greenwell, 231 Mo.App. 1093, 85 S.W.2d 150, loc. cit. 155(4); Clark v. Clark, Mo.App., 228 S.W.2d 828, loc. cit. 832(4–6)." See also Chapman v. Corbin, Mo.App., 316 S.W.2d 880.

The existence of a consideration, however, does not eliminate the requirement that the agreement must be fair and reasonable to the wife. The burden of making a showing that the agreement is unfair is naturally on the party seeking to invalidate it. And the solemn provisions and recitals in such an agreement may not be lightly brushed aside. Clark v. Clark, Mo. App., 228 S.W.2d 828, 832. The evidence here is most incomplete due largely, we assume, to the bar of the Dead Man's Statute. However, the court should have permitted the plaintiff to show the extent of her property immediately *after* the appointment of the executrices. This was apparently excluded because it was deemed not to be relevant. It was probably as relevant as was the showing of the value and extent of the husband's property by means of the inventory. While neither of such valuations would be closely related in time to the date of the contract, they were apparently the best available and did have some relevancy. Egger v. Egger, 225 Mo. 116, 123 S.W. 928, loc. cit. 935. We have the duty to make our own findings from the evidence, but we may not do so from a mere offer of proof which was denied. The proffered evidence was not taken and preserved under Civil Rule 73.01, and the asserted facts may not be considered here. For a recent review of the effect of the Dead Man's Statute, see Birdsong v. Estate of Ladwig, Mo.App., 314 S.W.2d 471.

Essentially, the only evidence in the record bearing on the fairness of the contract is that concerning the extent and valuations of the husband's property at the time of his death, and the valuations in 1954 of the two tracts of real estate described in the contract; even so, decedent's debts and liabilities are not shown as of any date. The will is in evidence, but it was made and executed more than five years after the date of the marriage agreement, it had no stated connection with the contract, and it is of no materiality in our consideration of the fairness of the contract when made. It

would seem that the trial court either considered the contract to have been made totally without consideration, or that the court considered it to be unfair, assuming that the wife had little property of her own. We must consider also, as already mentioned, that plaintiff did *not* release her rights in any personal property nor in any after-acquired real estate; and of the latter, there seems to have been a tract appraised at $48,000 at the time of Mr. McQuate's death, although the date of acquisition was not shown by anyone. The wife did release, or purport to release, all her interest in two tracts of land valued in the inventory at a total of $72,855, which were apparently unencumbered at that time (defendant bank's answer giving some details of the deeds of trust). Plaintiff's evidence showed these two tracts to have been worth somewhat less as of 1954.

 The essential fairness of contracts or agreements of this general type has been considered in the following cases: Hall v. Greenwell, 231 Mo.App. 1093, 85 S.W.2d 150; Clark v. Clark, Mo.App., 228 S.W.2d 828; Mathis v. Crane, 360 Mo. 631, 230 S.W.2d 707, 27 A.L.R.2d 873 (antenuptial); In Re Woods Estate, 288 Mo. 588, 232 S.W. 671; Speiser v. Speiser, 188 Mo. App. 328, 175 S.W. 122; Johns v. McNabb, Mo., 247 S.W.2d 640; Bloss v. Bloss, Mo., 251 S.W.2d 78. In some of those cases the agreements were upheld, in others they were invalidated. It would be useless to attempt a comparison of the various facts in those cases with the very sparse facts which we have here. The trial court in such cases attempts to determine whether, under all the facts and circumstances, the provisions made for the wife or the consideration moving to her are fair, equitable and reasonable; this does not necessarily mean that she must receive any specific part of the husband's property or even her share under the law of intestacy; note Clark v. Clark,

supra. If each releases all claims on the property of the other, that of the wife need not be precisely equal to that of the husband. We have nothing here to show what the husband gave the wife by waiving his marital interests in her property, for there is no evidence as to the value of her property at any time. The mere agreement to permit her to deal freely with her own property has been held to afford no consideration. In Re Woods, supra; Bloss v. Bloss, Mo., 251 S.W.2d 78; the contrary may have been indicated in Chapman v. Corbin, Mo.App., 316 S.W.2d 880. But the present agreement went further.

 We have concluded that there was not sufficient evidence to support a judgment invalidating the contract as unfair and unreasonable. By the same token, there is insufficient evidence to sustain a finding for the plaintiff here. We realize the difficulty of producing determinative evidence in view of the prohibitions of the Dead Man's Statute. There may have been, however, some misconception at the trial of the extent of proof necessary for the invalidating of such a contract. Under these circumstances, we shall reverse the judgment but, in the exercise of our discretion, we shall remand the case for another trial to give the parties an opportunity to present such additional evidence as they may be able to discover, if they are so advised. See Obermeyer v. Hentschel et al., Mo., 389 S.W.2d 203, opinion adopted April 12, 1965. We certainly do not preclude the right to show any grounds of invalidity which are pleaded and of which there might be evidence.

We suggest that upon another trial it might be helpful for the court to make more specific findings and declarations.

The judgment is reversed and the cause is remanded for a new trial.

All of the Judges concur.