In the Matter of the **ESTATE** of George D. YOUNGBLOOD, Deceased.

In re Lodusca **YOUNGBLOOD**, Claimant-Appellant.

No. 8921.

Springfield Court of Appeals.

Missouri.

Nov. 20, 1969.

A. L. Shortridge, Joplin, for claimant-appellant.

Ruyle & Henry, Neosho, for Estate.

Frieze & Crandall, Carthage, for Beneficiaries.

STONE, Judge.

This is an appeal by Lodusca Youngblood, the widow of George D. Youngblood, from a judgment of the Circuit Court of Newton County where, upon her appeal from an adverse judgment of the probate court, her election to take against the will of her deceased husband and her applications for statutory allowances from his estate were again denied.

When they were married on October 10, 1966, George and Lodusca were about 68 years of age with only three months difference in their ages. They had known each other since grade school days and, with their prior spouses, had reared families on nearby farms in the same rural neighborhood in Newton County, Missouri. Left alone by the deaths of those spouses, the lifelong friendship of George and Lodusca ripened into marriage. In contemplation thereof they thrice conferred with George Henry, Esquire, of the Newton County Bar, told him (so he testified) "that they wished to enter into an agreement whereby each of them retained for their own heirs their respective property," and on October 7, 1966, executed an antenuptial agreement prepared by him. After preliminarily reciting, inter alia, that George was a widower with nine children, eight living and one deceased with issue, that Lodusca was a widow with two children, and that each was "possessed of both real estate and personal property the extent of which has been fully and frankly disclosed by each of the parties hereto unto the other," the antenuptial agreement provided, in part, that "during the joint lives of the parties each shall have the power of disposition and control over his or her property as if he or she were single and unmarried," and that "upon the death of either party, this contract shall fully discharge all rights of inheritance and all other statutory rights in the estate of the other and neither shall have any interest, rights or claim in or to the estate of the other by virtue of any law whatsoever so that all of the estate of the first to die shall go and be disposed of as if said party had continued single and unmarried unless either party shall hereafter provide otherwise by inter vivos or testamentary instrument, but if there be such a will there shall be no right to elect to take against such will." Thereafter on October 7, 1966, but with George not present, Lodusca asked Mr. Henry to draw her will, he did so, and she signed it with due formality. Her two children and a granddaughter were the only beneficiaries under that will.

When the antenuptial agreement was executed on October 7, 1966, and the parties were married on October 10, 1966, *George owned* (a) a 240-acre farm encumbered by a deed of trust securing payment of the then balance of $11,094.65 on a note held by the Federal Land Bank, (b) a 20-acre tract referred to as "the home place" encumbered by a deed of trust securing payment of the then balance of $1,500 on a note held by one Bowman, and (c) certain personalty which need not be listed or described here, and *Lodusca owned* (a) an unencumbered 83-acre farm and (b) certain personalty which need not be listed or described here. On July 12, 1967, George sold the 240-acre farm with Lodusca joining in the conveyance. And on September 11, 1967, George made his last will and testament in which he first declared that because of their antenuptial agreement there was no provision in his will for Lodusca, named his eight living children and the only child of his deceased son, made certain specific bequests of personalty, *specifically devised the home place to one of his daughters,* and devised and bequeathed the residue of his estate to three of his children.

George died testate on April 3, 1968, and shortly thereafter his will of September 11, 1967, was admitted to probate and letters testamentary were issued to Mr. Henry. The inventory and appraisement showed real property, i. e., the home place which George still owned at the time of his death, appraised at $10,000 and personal property appraised at $35,298.84. On June 28, 1968, Lodusca as George's widow filed in the Probate Court of Newton County (a) her election to take against the will [§ 474.160] in the form prescribed by statute [§ 474.190], (b) her application for exempt property [§ 474.250], (c) her application for family allowance [§ 474.260], and (d) her application for homestead allowance [§ 474.290, as amended Laws 1961, p. 653], in which she selected the home place, specifi-

cally described in the application, "to constitute a part of said homestead allowance" and prayed that the executor "be authorized and directed to execute a conveyance transferring" that real estate or an appropriate undivided interest therein to her. (All statutory references are to RSMo 1959, V.A.M.S.) On July 13, 1968, beneficiaries under George's will filed a "Petition in Bar" in which they pleaded the antenuptial agreement of October 7, 1966, and prayed the court to enter an order denying Lodusca's election and applications. Cast in the probate court and then in the circuit court, Lodusca again appeals.

 The case is presented here on the premise that we have appellate jurisdiction because, in the language of appellant's jurisdictional statement adopted by opposing counsel, "it does not appear affirmatively from the record that more than $15,000 is involved." *If* appellate jurisdiction depended solely upon the amount in dispute, we would agree with counsel that the appeal properly was taken to this court, for the record made in the trial court, as embodied in the transcript on appeal, does not show affirmatively and with certainty that, regardless of all contingencies, the amount in dispute exceeds $15,000, exclusive of costs. See Sanderson v. Richardson, Mo. App., 432 S.W.2d 625, 627–628, and cases there cited. However, appellate jurisdiction may not be conferred by waiver, acquiescence or even express consent [State ex rel. Pemberton v. Shain, 344 Mo. (banc) 15, 17, 124 S.W.2d 1087, 1088(1); Higgins v. Smith, 346 Mo. (banc) 1044, 1047, 144 S.W.2d 149, 151(4); Mack v. Mack, Mo., 281 S.W.2d 872, 873(1)]; and, in the discharge of our initial responsibility to inquire into and determine our jurisdiction, even though it be not challenged by the parties [Sunray DX Oil Co. v. Lewis, Mo., 426 S.W.2d 44, 48(1, 2); Kansas City v. Howe, Mo.App., 416 S.W.2d 683, 686(3); Morrow v. Caloric Appliance Corp., Mo.App., 362 S.W.2d 282, 283(2)], we cannot ignore and pass the question, obtruding on the face of the record, as to whether this is a case "involving . . . . the title to real estate" of which our Supreme Court has exclusive appellate jurisdiction. Art. V, Sec. 3, Mo.Const., 2 V.A.M.S.

Almost all of the immunerable decisions which have discussed the meaning of that constitutional provision during the last forty years have quoted from or cited the landmark opinion of our Supreme Court, en banc, in Nettleton Bank v. McGauhey's Estate, 318 Mo. 948, 2 S.W.2d 771 (1928). The court there distilled the "general principle . . . running through" the earlier cases in this simple and succinct statement, i. e., "for an action to involve title to real estate in the constitutional sense, the judgment sought or rendered must directly affect or operate upon the title." 318 Mo. at 952, 2 S.W.2d at 774(5). And in the course of an analytical discussion, the court emphatically reiterated the same controlling principle in this language, to wit, "the fact should be remembered that it is the *judgment* sought or rendered, in each instance, which is determinative of jurisdiction; and that when the pleadings or record, as the case may be, are consulted it is for the sole purpose of ascertaining the *direct* operative effect of the judgment— which must be directly to take title from one and give it to another." 318 Mo. at 954–955, 2 S.W.2d at 775. As the court then observed with appropriate illustration, "probably the greatest difficulty encountered has been in determining when a judgment does directly affect title." The meaning and significance of the phrase *"judgment sought or rendered"* were made manifest in this wise: "If the judgment *rendered* determine title, that is sufficient to classify the controversy, and title is involved in the constitutional sense, regardless of whether or not the pleadings are broad enough to sustain the judgment . . . .. Conversely, though the judgment rendered do [sic] not determine title, yet if the judgment *sought* by the appealing litigant would directly affect title, title is directly in issue, and therefore involved, but

in that case the pleadings must be looked to to settle the question. However, for the reason just stated, the scrutiny does not go to the extent of determining whether the pleadings relied on state a good cause of action, but only far enough to ascertain the class in which the case falls with respect to relief sought." 318 Mo. at 954, 2 S.W.2d at 775(10, 11). In this connection, see Farris v. Hendrichs, Mo.App., 410 S.W.2d 97, 99(4), transferred Mo., 413 S.W.2d 185.

In determining whether the judgment *sought* by Lodusca, the appealing litigant here, would directly affect title, we necessarily must look to her election and applications which, for that purpose, served the office of pleadings, i. e., "to present, define and isolate the controverted issues so as to advise the trial court and the parties of the issues to be tried and to expedite the trial of a cause on the merits." Johnson v. Flex-O-Lite Mfg. Corp., Mo., 314 S.W.2d, 75, 79(3); Walker v. Kansas City Star Co., Mo., 406 S.W.2d 44, 54(9). See Linders v. Linders, 356 Mo. 852, 855, 204 S. W.2d 229, 230(2); Wilson v. Motors Insurance Corp., Mo.App., 349 S.W.2d 250, 253(1). By her election, Lodusca sought, notwithstanding the antenuptial agreement, to take against George's will, which specifically devised the 20-acre home place to his daughter, Esther Williams, and by virtue of which the title to that real estate passed to said devisee upon his death. Section 473.260. It is obvious that, if Lodusca's election were granted, title to an undivided one-third interest in the home place would be taken from Esther Williams, the devisee, and given to Lodusca. Section 474.-160, subsec. 1(1); McQuate v. White, Mo., 389 S.W.2d 206, 210. See Borchers v. Borchers, 352 Mo. 601, 606, 179 S.W.2d 8, 10(3); Lee's Summit Bldg. & Loan Ass'n. v. Cross, 345 Mo. 501, 511, 134 S.W.2d 19, 25(18). And, by her application for spouse's homestead allowance she selected the home place "to constitute a part" of such allowance and prayed that the executor "be authorized and directed to execute a conveyance transferring" that real estate or an appropriate undivided interest therein to her. Section 474.290, as amended Laws 1961, p. 653.

In McQuate v. White, Mo. (Div. 2), 389 S.W.2d 206, 208, the plaintiff widow sought a declaration that an antenuptial agreement was void and that she be declared to have the same interest in certain described real estate as she otherwise would have had. After a perceptive and penetrating discussion of plaintiff's assertion that the Supreme Court did *not* have appellate jurisdiction *because title to real estate was not involved*, the court concluded that "[w]hile the judgment actually entered here made no express adjudication of title, we hold, nevertheless, that we have jurisdiction." 389 S.W.2d at 210–211(2). And in the case of In re Estate of Reed, Mo. (Div. 1), 414 S.W.2d 283, where the appeal was from a judgment granting, notwithstanding an antenuptial agreement, the widow's election to take against the will and her applications for statutory allowances, and where "[t]he inventory showed real estate appraised at $13,200, and personal property appraised at $353.65" [414 S.W.2d at 285] and the amount in dispute obviously was less than $15,000, and where the involvement of title to real estate was the only apparent ground of appellate jurisdiction in the Supreme Court, the appeal was determined on its merits. In this connection, it may not be inappropriate to note also that, in a will contest where the testator's estate includes real estate, the Supreme Court has appellate jurisdiction on the ground that title to real estate is involved [Gillmore v. Atwell, Mo., 283 S.W. 2d 636, 637(1); Wipfler v. Basler, Mo., 250 S.W.2d 982, 984(1); Norwood v. Norwood, 353 Mo. 548, 551, 183 S.W.2d 118(1); Higgins v. Smith, 346 Mo. (banc) 1044, 1046, 144 S.W.2d 149, 151(2); State ex rel. Pemberton v. Shain, 344 Mo. 15, 18, 124 S.W.2d 1087, 1088(6)], even though "[i]n a will contest the issue in fact decided is not the question of title to the real estate . . .." Tant v. Gee, 236 Mo. App. 133, 141, 146 S.W.2d 61, 64, transferred 348 Mo. 633, 154 S.W.2d 745.

Mindful that, as the foregoing cases serve to demonstrate and establish, the determinative jurisdictional factor is not the form of the action but whether the judgment sought or rendered directly affects or operates upon the title to real estate [Albi v. Reed, Mo., 281 S.W.2d 882, 884(1); Nettleton Bank v. McGauhey's Estate, supra], we are unable to escape the conclusion that the judgment sought by Lodusca, the appealing litigant, would directly affect or operate upon the title to the 20-acre home place, and that, therefore, our Supreme Court is invested with exclusive appellate jurisdiction of this appeal. Art. V, Sec. 3, Mo.Const. Accordingly, the clerk of this court is directed to transfer this cause forthwith [§ 477.080], together with a copy of this opinion and order, to the clerk of the Supreme Court of Missouri.

HOGAN, P. J., and TITUS, J., concur.