JOHN TANT v. E. B. GEE, Appellant.—154 S. W. (2d) 745.

Division Two, October 25, 1941.

*R. F. Baynes* for appellant.

*Merrill Spitler* and *Ward & Reeves* for respondent.

██ BOHLING, C.—John Tant instituted this action against E. B. Gee for the specific performance of a written contract to sell and convey certain described lands in New Madrid County, Missouri, upon, among other things, the payment of $2400, principal amount; plaintiff's petition alleging performance and seeking a credit of $1320 on the aforesaid consideration by reason of alleged real estate commissions earned in connection with the sale of three certain tracts of land in a total sum of $1320, viz., $40 on the sale of a forty-acre tract at the rate of $1 per acre, which credit defendant does not dispute, and $1280 on the sale of two 320-acre tracts—one to Hugh A. Tistadt, the other to N. W. Clark—at the rate of $2 per acre.

██ The chancellor found the issues and all the issues for the plaintiff and, after adjusting the credits and interest, decreed specific performance, conditioned upon the payment of $1350.55 by plaintiff. Defendant's motion for new trial attacked the whole of the decree and judgment of the court. Defendant prosecuted an appeal to the Springfield Court of Appeals and there, as here, presented only issues questioning the propriety of the credits allowed plaintiff nisi. That court, on the ground title to real estate was involved within the meaning of Art. 6, Sec. 12, Mo. Const., transferred the review proceedings here. [Tant v. Gee (Mo. App.), 146 S. W. (2d) 61.] We have said appellate jurisdiction over the subject-matter is determined upon the record in the trial court at the time the appeal is granted. [State ex rel. Brenner v. Trimble, 326 Mo. 702, 709, 32 S. W. (2d) 760, 762[2]; McGregor v. Gaskill, 317 Mo. 122, 125, 296 S. W. 123, 124[6].] Consult State ex rel. Brown v. Hughes, 345 Mo. 958, 137 S. W. (2d) 544, cited by the Springfield Court of Appeals.

Defendant does not question certain matters of a technical nature in the record. We refrain from mentioning these and take the case as presented.

██ This is not a case involving the mere listing of real estate with a broker for sale. It involves a special contract of brokerage. The petition, evidence and decree are based on said contract. The contract of purchase and sale between plaintiff and defendant is dated November 12, 1935. It provided, among other things and insofar as here material, for the payment by plaintiff of $2400 ($30 per acre) in six annual installments, with interest from date, the last becoming due November 1, 1941; for the immediate possession thereof by plaintiff and his clearing said land and reducing the same to cultivation, a lien by defendant on one-third of the corn and one-fourth of the cotton to secure the payment of the purchase price; and for the avoidance of the contract upon default in performance by the plaintiff, et cetera. By letter of even date therewith, signed by defendant and addressed to and "accepted by" plaintiff, defendant authorized

plaintiff to sell the lands here involved, and others, at $30 per acre; the letter stating, among other things and insofar as material, that defendant would "agree to a sale of said land on the basis that the purchaser make no cash payment at the time of purchase, provided" the customer reduce one-half of the land purchased to cultivation by April 1, 1936, and the balance by April 1, 1937, and pay therefor in specified annual installments, with interest; and conditioned explicitly, among other things, as follows:

"For such sales as you may make in accordance with the above, I agree to give you credit on the land you have purchased from me, at the rate of $1.00 per acre, on such land as you might sell, when and only when I have collected from any given sale the sum of $1.00 per acre and you are not to have any greater credit on your purchase from me, than the total of the cash received by me from sale you might make.

"This is not to be construed as an option to you, and I reserve the right to sell said land myself or to dispose of the same through other agents and I reserve the right to raise the price on said land or to remove the same from the market without notice to you."

By letter dated March 28, 1936, from defendant to, and "accepted by," plaintiff, the brokerage contract was modified as follows:

"This letter will confirm our recent verbal agreement and will supplement our contract as to the amount you are to receive for selling land for me in the vicinity of Wardell wherein E. B. Gee is to pay John Tant $2.00 per acre for selling land in the future instead of $1 per acre as per original contract, this being the only change in said contract; all other covenants remaining the same."

On April 6, 1936, Hugh A. Tistadt contracted to purchase 320 acres of the land involved for $9600 ($30 per acre), with interest from date, payable: $480 on November 1, 1937, $1440 on November 1, 1938, and the balance at the rate of $6 per acre annually on November 1st of each ensuing year until paid. Tistadt contracted to have 160 acres thereof ready for the plow by April, 1937, and a minimum of 320 acres in cultivation in 1938. The contract provided for a lien to defendant on one-third of the corn and one-fourth of the cotton produced on the land in 1937 and ensuing years to secure the payment of the purchase price and for the execution of a deed to the purchaser upon performance of the covenants with respect to clearing the land and payments "during said clearing period," et cetera. Plaintiff's petition proceeds upon the theory defendant voluntarily and in bad faith neglected to collect the cash payments to defraud plaintiff of his commissions. Plaintiff testified he mailed defendant a letter in September, 1938, which defendant testified he never received, instructing defendant to collect from Tistadt, as plaintiff wanted his $2 commission credited. We need not detail the testimony. Mr. Tistadt never made any payment on his contract

of purchase. He testified he was not able to meet the terms of the contract; "I wasn't able to make them at all;" and that when defendant gave him to understand he was going to expect performance of the contract of sale, he surrendered the contract to defendant.

Usually, a broker earns his commission when he produces a purchaser ready, willing and able to purchase upon the terms specified by the owner, whether the transaction be closed or not, or upon terms satisfactory to the owner. However, owners and their brokers, like others, may by their expressed contract condition liability upon prescribed events, contingencies or conditions precedent. [Hughes & Thurman v. Dodd, 164 Mo. App. 454, 460, 146 S. W. 446, 448; Young v. Stecher Cooperage Works, 259 Mo. 215, 220, 168 S. W. 611, 612; Gibson v. Pleasant Val. Development Co., 320 Mo. 828, 838(VI), 8 S. W. (2d) 828, 831[4]; LaForce v. Washington University, 106 Mo. App. 517, 81 S. W. 209; Pratt v. Irwin (Mo. App.), 189 S. W. 398; Westerman v. Peer Inv. Co., 197 Mo. App. 278, 195 S. W. 78.] Mr. Tistadt's contract of purchase was similar to plaintiff's contract of purchase and its provisions were within the terms of plaintiff's brokerage contract. Tistadt was not ready, willing and able to and never did perform his contract of purchase with respect to clearing the land or making any payments thereon. Plaintiff's brokerage contract conditioned his right to credit on his purchase contract to the receipt of $2 cash per acre by defendant; that is, plaintiff was to receive such credit when and only when defendant collected $2 per acre from any given sale and plaintiff was to receive no greater credit on his purchase than the total cash received by defendant from the sale made by plaintiff. The purchaser, not the owner-defendant, was in default. The testimony is that defendant was willing to accept performance by Tistadt, requested it, and did not actively hinder or prevent performance. Defendant discharged his obligation to plaintiff by continued willingness to perform. [In re Boley's Estate, 211 Wis. 431, 248 N. W. 452.] Passiveness on the owner's part (Amies v. Wesnofske, 255 N. Y. 156, 174 N. E. 436, 73 A. L. R. 918, 922; Re Boley's Estate, supra) or consent to the cancellation of the contract of sale after and because of default on the part of the purchaser (Sweet v. H. R. Howenstein Co., 64 App. D. C. 20, 73 Fed. (2d) 660, 661[2]; Dunne v. Colomb, 192 Cal. 740, 221 Pac. 912, 913[2-4]; Weiner v. Infeld, 116 Misc. 323, 190 N. Y. S. 82, 85[7]), is not evidence of arbitrary, capricious, unreasonable, wrongful or fraudulent action on the part of the owner. Plaintiff never produced a purchaser ready, willing and able to perform within the terms of his contract of brokerage; i. e., make cash payments on the purchase price, and is not entitled to recover thereon. [Prideaux v. Plymouth Securities Co., 231 Mo. App. 1060, 1069, 84 S. W. (2d) 166, 170[4]; Pratt v. Irwin (Mo. App.), 198 S. W. 398, 399[3]. Consult 12 C. J. S., pp. 229, 230; 8 Am.

Jur., p. 1096, sec. 180; Annotations, 51 A. L. R. 1399(II); 73 A. L. R. 929(II); Smith v. Stubb (Mo. App.), 293 S. W. 496, 498.[7].]

██ With respect to the N. W. Clark transaction it is sufficient to state that ██ Clark agreed to purchase 320 acres for $8000 ($25 per acre) on August 10, 1936; and that out of this transaction defendant eventually realized sufficient cash ($1800) from Clark's grantees to pay plaintiff's commission of $640, if earned. Defendant testified that he first priced the land to Clark at $30 per acre when Clark asked about it; that Clark refused to buy at that price; that they later agreed upon $25 per acre; and that neither Clark nor plaintiff informed him that plaintiff had shown the land to or discussed it with Clark. Clark testified that plaintiff had shown the land to him; that he informed defendant of that fact, and that plaintiff informed him he was to receive $2 an acre for selling the land. Plaintiff testified: "Q. What was said between you and Clark about doing better? A. He said if he could get it cut down, now what about it. I said that it is up to you, the price is $30.00 per acre. He agreed to that at that time." Also: That he did not accompany Clark to New Madrid at the time Clark purchased; that he didn't know that he notified Gee or Edwards (who also represented Mr. Gee) that Clark was coming; that he did notify them; that he telephoned Gee at Blytheville, Arkansas, about Clark. "Q. Did you tell him of the sale you had made to Clark for $30.00 per acre? A. I didn't say anything about $30.00 per acre, the contract speaks for that. I told Gee I was satisfied Mr. Clark was going to take it for $30.00 per acre. No, sir, I didn't tell them he was going to try to get the price cut down but if they would stay with me they would get $30.00 per acre. . . . Yes, sir; I said I had it sold for $30.00 per acre. No, sir, I didn't tell him the party was going to try to get the price reduced. . . . Yes, sir; I knew that under this contract it was to be sold for $30.00 per acre."

Plaintiff understood his contract of brokerage called for a sale at $30 per acre. Defendant did not prevent plaintiff making such a sale. Plaintiff agreed to defendant's reservation to sell the real estate. A sale for $25 an acre was not a sale for $30 an acre. The duty of courts is to interpret and enforce contracts, not to make them. One may be willing to pay a commission of $2 an acre for the sale of land at $30 an acre and entirely unwilling to pay $2 an acre for a sale at $28 or less per acre. Unless we rewrite the brokerage contract for plaintiff and defendant, plaintiff is not entitled to recover under the contract sued on. [Hughes & Thurman v. Dodd, supra; Young v. Stecher Cooperage Works, supra; Gibson v. Pleasant Valley Development Co., supra.] Plaintiff's testimony is somewhat contradictory. First he testified he did not know that he notified defendant Clark was coming to purchase the land; next that he did notify defendant. Also, that he did not say anything to defendant

about the $30 per acre; next that he did so inform defendant. Notwithstanding plaintiff's testimony contra, Clark never legally bound himself to pay $30 an acre. At best, he agreed upon a price of $30 only in the event he could not secure a reduction. Plaintiff acquiesced in this. Plaintiff's version tends to the conclusion that, in an attempt to defraud plaintiff of $2 an acre, defendant unnecessarily yielded up an additional $3 an acre. This is not the usual course of business. Plaintiff admittedly did not inform defendant that he could sell to Clark at $30 per acre if he ''would stay with'' plaintiff or that Clark's coming was with the expressed purpose of securing a reduction from $30 an acre. Daugherty v. Stocks, 185 Mo. App. 541, 544, 172 S. W. 616, 617, states: ''It is a flagrant breach of duty the agent owes if he deceives his principal by concealment of material facts and it forfeits his right to compensation.'' [Consult Joy v. Bixby (Mo. App.), 10 S. W. (2d) 342, 343[5]; 12 C. J. S. 160, n. 71; 9 C. J. 568, n. 67.]

The judgment is reversed and the cause remanded with directions to condition the decree of specific performance upon a credit to plaintiff of $40 only and otherwise proceed in conformity herewith. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.