**MERIDIAN INTERESTS, INC., d/b/a Meridian Properties,**

v.

**J.A. PETERSON ENTERPRISES, INC., Appellant.**

**No. WD 35444.**

Missouri Court of Appeals, Western District.

April 30, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied July 2, 1985.

Application to Transfer Denied Aug. 7, 1985.

William E. Simmons, Kansas City, for appellant.

Joseph W. Amick, Kansas City, for respondent.

Before LOWENSTEIN, P.J., and SOMERVILLE and NUGENT, JJ.

NUGENT, Judge.

Defendant appeals from a verdict and judgment awarding plaintiff its broker's commission for procuring a ready, willing, and able buyer for a Kansas City apartment building, the sale of which was not completed. Defendant complains that the evidence was insufficient to submit the case to the jury and that the court erred in instructing the jury. We affirm.

Defendant, J.A. Peterson, Inc., is owned by Gordon Peterson. In 1977–78, defendant was having a cash flow problem and its creditors were pressuring Mr. Peterson to sell some of the company's properties.

On May 17, 1978, Peterson hired plaintiff Meridian Enterprises to act as broker in the sale of the Cherokee Village Apartments. The parties entered into a written exclusive listing agreement which in pertinent part provides as follows:

In consideration of the services of Meridian Properties, hereinafter called Broker, I hereby list with said broker, exclusively, for a period of 30 days from date hereof, the following described property and at the following price and terms:

Name: Cherokee Village Apartments
Address: 1207 Cherokee Drive, Liberty, Missouri
Selling Price: $1,400,000.
Mortgage: $1,050,000. 8½% 40 year balloon in 7 years
Cash Down: $350,000.

I hereby agree to pay said broker as commission ($50,000) (3½%) of the selling price should, during the time set forth herein, said property be sold by said broker or by another broker, at the above price and terms agreeable to me.

. . . .

At the time of this controversy, Peterson Enterprises did not have legal title to the property but was in possession under a contract for deed. To obtain title, defendant had to pay an additional $88,000 to its seller. The defendant had also assumed four mortgages on the property containing acceleration and due-on-sale clauses.

Meridian was able to procure two prospective purchasers of the complex, James Polsinelli and John Gramlich. By letter dated June 7, 1978, the broker requested that Peterson list them as prospective buyers. On June 8, 1978, the purchasers made the following written offer:

Please consider this letter as our offer to purchase the Cherokee Village Apartments in Liberty, Missouri under the following terms and conditions:

. . . .

2. The purchase price is $1,400,000.00. A total down payment in the sum of $350,000.00, with $200,000.00 to be paid at the date of closing and the remaining $150,000.00 payable on or before (date of closing). The $150,000.00 carry back shall be secured by a deed of trust in a form acceptable to Seller and shall be carried back at a 10½% interest rate, payable interest only for the year with a single payment, principal and interest due upon maturity. The remainder of the purchase price consisting of $150,000.00 shall be carried back by the

Seller with an all-inclusive non-recourse deed of trust providing for annual payments of $90,200.00 per year and the beneficiaries equity in said all-inclusive deed of trust shall balloon on July 1, 1983. The $150,000.00 carry back shall be personally guaranteed by the principals.

. . . .

4. The sales contract shall contain the standard pro-rations for taxes, utilities, maintenance expenses and rents and security deposits shall be delivered to Buyer at closing.

5. Seller to furnish Buyer a title policy insuring merchantable title in the property.

6. Upon execution of this offer by both parties, the parties shall proceed to draw a formal contract which shall be executed no later than June 23, 1978 and contain the usual contract clauses and exhibits for the note and deed of trust to be executed by the purchasers.

If the above is acceptable, would you please execute where indicated and we will proceed to have this matter handled as expeditiously as possible.

Mr. Peterson on behalf of Peterson Enterprises signed the letter, accepting the offer. Mr. Peterson admitted at trial that he had agreed to the above terms and that they were the material terms of the sale.

Mr. Polsinelli and Mr. Gramlich then submitted to Mr. Peterson a long form sales contract which defendant found unacceptable. The contract varied in two respects from the June 8th offer: first, the rate of interest on the note was to be 8% instead of 8½%, and second, the balloon was deflated from seven years to five years. Mr. Peterson admitted at trial that he agreed to the above changes. The main stumbling block was that the Polsinelli contract would have made defendant responsible for the call clauses in the mortgages it had assumed. Mr. Peterson admitted that he did not consider this possibility before accepting the letter offer of June 8. He further testified that his objections to the Polsinelli contract were that it did not

provide a place for the wives to sign the note and contract and that he was not sure Peterson, Inc., owned the property since it had only a contract for deed. The parties agreed to have Mr. Peterson's attorney, Kent Perry, draw up a proposed sale contract and submit it to the purchasers.

Mr. Perry's proposed contract provided for an increased $250,000 cash down payment at closing with a $100,000 carry back secured by a letter of credit and payable in one year. Mr. Perry also drafted a proposed note and deeds of trust none of which provided spaces for the signatures of the buyers' spouses.

On the basis of the seller's proposed contract, the parties continued their negotiations. Mr. Peterson testified that a major problem in the negotiations was that Mr. Gramlich was having marital difficulties which might have prevented his wife from signing the note and contract. Several means of overcoming this difficulty were proposed, but no action was taken and the parties were never able to reach final agreement. The evidence conflicted as to how the negotiations ended. Mr. Polsinelli testified that he and Mr. Gramlich were ready to accept the seller's contract, but before they were able to do so the property was removed from the market. He conceded that their intention to sign was not communicated to Peterson but said the reason for that was that Mr. Peterson took the property off the market. Mr. Peterson testified that he withdrew the property because it was unsaleable. In contrast, Mr. Polsinelli testified that he had inspected the property and believed that it was suitable for sale.

The negotiations continued for over four months. During that time, Mr. Peterson was able to sell other property, thereby relieving his company of its immediate financial problems.

When defendant refused to pay its $50,-000 commission, Meridian filed suit for breach of contract. The case was tried to a jury, defendant's motions for directed verdict at the close of plaintiff's case and at the close of all the evidence were denied.

The trial judge gave plaintiff's verdict director instruction number six based on M.A.I. 29.01. The jury returned a verdict in favor of plaintiff. The court denied defendant's motion for judgment notwithstanding the verdict or in the alternative a new trial.

Defendant raises two points on appeal: first, that plaintiff did not adduce sufficient evidence that it had produced a ready, willing and able buyer to justify submitting plaintiff's case to the jury; second, that the court erred in giving instruction number six because it included only the sale price and omitted other terms of purchase that were in issue.

I.

■■■ Defendant's first point challenges the court's denial of its motion for a directed verdict at the close of all the evidence. The trial court can only direct a verdict in favor of a defendant where the evidence and inferences drawn from it are so strongly against the plaintiff that no room remains for reasonable minds to differ on the disposition of the case in favor of the defendant. *Martin v. Brune*, 631 S.W.2d 77, 79–80 (Mo.App.1982); *Carter v. Boys' Club of Greater Kansas City*, 552 S.W.2d 327, 328 (Mo.App.1977). In determining the submissibility of a case, we must consider the evidence in the light most favorable to the plaintiff, accord it all reasonable inferences, and disregard defendant's evidence except as it may add to plaintiff's case. *Id.; Dudley v. Dumont*, 526 S.W.2d 839, 843 (Mo.App.1975).

■■■ The general rule is that a broker earns his commission when he produces a buyer ready, willing and able to buy on terms specified by the seller, whether or not the sale is completed. *Marrs v. Twitty*, 635 S.W.2d 374, 376 (Mo.App.1982); *E.A. Mabes and Co. v. Fishman*, 284 S.W.2d 21, 26 (Mo.App.1955). A seller and his broker may by express contract condition payment of the broker's commission upon the occurrence of certain events, contingencies or conditions precedent. *Clarkson v. Stan-*

*dard Brass Mfg. Co.*, 237 Mo.App. 1018, 170 S.W.2d 407, 414 (1943).

The issue before us is whether plaintiff produced sufficient evidence to have its case submitted to the jury on that legal theory. The terms of the listing agreement provided for a sale price of $1,400,-000, a $350,000 cash down payment with a $1,050,000 mortgage at 8½% and a 40–year balloon in seven years. The prospective purchasers, Gramlich and Polsinelli, offered to buy the property for $1,400,000 with total down payment of $350,000, $200,000 to be paid at closing, the rest to be paid one year later; $1,050,000 financing by means of a non-recourse note at 8½% interest and a seven year balloon. Mr. Peterson accepted the terms offered by the purchasers. The purchasers later offered 8% interest on the financing with a five year balloon, and Mr. Peterson also accepted those changes. He admitted at trial that he had agreed to all the material terms offered by the purchasers.

■■■ The terms of sale specified in the listing agreement and the terms offered by the purchasers varied in several respects, but the defendant agreed to the changes. The seller is liable for his broker's commission when a purchaser is willing to buy on the seller's terms or on terms agreeable to the seller. *Tant v. Gee*, 348 Mo. 633, 154 S.W.2d 745, 747 (1941). Mr. Peterson's acceptance of the June 8 letter offer and his trial testimony that he agreed to the material terms offered by Polsinelli and Gramlich constituted sufficient evidence to resist defendant's motion for a directed verdict.

■■■ The defendant raises a number of problems with the purchasers' proposed sale contract. He specified in his deposition, admitted in part at trial, that those problems were that the buyers' proposed note and contract had no place for the purchasers' wives to sign and that he was not sure whether his company owned the property. Those concerns or conditions were not specified in the listing agreement. The fact that a principal does not have legal title to the property will not release him from liability for the broker's commis-

sion. *E.A. Mabes and Co. v. Fishman, supra,* 284 S.W.2d at 26.

Mr. Perry, Mr. Peterson's attorney, drafted a counter proposal contract that was never signed. The buyers testified that they eventually decided to accept the Perry contract, but before they could do so the property was withdrawn from the market. Mr. Peterson testified that he removed the property from the market because it was unsaleable and he knew nothing of the buyers' intention to agree to his counter proposal. That evidence concerns the difficulties the buyers and the seller had in formalizing their agreement. It does not relate to the real issue whether the purchasers were ready to buy on terms the seller had specified to the broker. In any event, where the parties' evidence conflicts, the matter is for the jury to decide. *Schaeffer v. Reineke,* 121 S.W.2d 213, 221 (Mo.App.1938).

## II.

■ Defendant's second point is that the court erred in giving plaintiff's instruction number six which reads as follows:

"Your verdict must be for plaintiff if you believe:

First, plaintiff was a licensed real estate broker, and

Second, plaintiff and defendant agreed that plaintiff should receive $50,000.00 as a commission if plaintiff produced purchasers who were ready, willing and able to purchase the property for $1,400,-000.00, and

Third, plaintiff did produce purchasers who were ready, willing and able to purchase for such price and so informed defendant."

The instruction is based on M.A.I. 29.01. Defendant's claim of error concerns paragraphs second and third of the instruction. The officially approved instruction is in the following form:

Second, plaintiff and defendant agreed that plaintiff should receive ___% of the sale price as commission if plaintiff produced a purchaser [who was ready, willing and able] to purchase the prop-

erty for $___ (**plus any other terms of purchase which are in issue**) and

Third, plaintiff did produce a purchaser [who was ready, willing and able] to purchase for such price (**and on such terms**) and so informed defendant. (Footnotes omitted.)

Defendant argues that other terms of purchase were in issue and should have been included in the instruction.

The defendant principally relies upon *Zellmer Real Estate, Inc. v. Brooks,* 559 S.W.2d 594 (Mo.App.1977), as authority for its point. In *Zellmer,* this court examined the issue whether the terms of sale should have been hypothesized in an instruction based on M.A.I. 29.01. We held that a court errs when it fails to include the terms.

The *Zellmer* case is distinguishable, however, and does not apply. The seller and the broker in *Zellmer* never reached agreement on the terms of purchase in a listing agreement. The seller orally requested that the broker list his farm for sale, and the broker produced prospective buyers before the seller specified any terms of sale. In that case, the parties agreed only on the price per acre. They disputed all other material terms of the sale, including the down payment, escrow terms and financing. The court held that, if in issue, the basic terms of purchase should be set forth in the verdict directing instruction. *Id.* at 597. In the present case, however, the parties do not dispute the terms of purchase as specified in their listing agreement. Meridian did produce a purchaser on terms that essentially complied with the listing agreement, and the variations in terms were accepted by the seller. *See, Tant v. Gee, supra.*

Paragraphs second and third of M.A.I. 29.01 make clear that the additional terms of purchase must be included in the instruction if the broker and the seller dispute the terms of purchase the seller has specified to the broker or if the parties dispute the terms offered by the purchaser as related to the listing agreement. The

**184**

Committee's Comment on this point states, "Real estate contracts vary in content and lawyers must be sure to submit to the jury any additional issues which their special cases may contain." The comment then quotes from *Tant v. Gee, supra,* 154 S.W.2d at 747, as follows:

Usually, a broker earns his commission when he produces a purchaser ready, willing and able to purchase upon the terms specified by the owner, whether the transaction be closed or not, or upon terms satisfactory to the owner. However, owners and their brokers, like others, may by their express contract condition liability upon prescribed events, contingencies or conditions precedent.

It also cites *Sargent v. Wekenman,* 374 S.W.2d 635, 639 (Mo.App.1969), for its holding that the instruction in the case was erroneous because it failed to hypothesize that plaintiff produced a lessee who would take on conditions imposed by the lessor. The comment notes that the *Sargent* court said at 639 that: "to recover his commission a real estate broker must show that he produced a buyer ready, willing and able to buy on the terms set by the owner or those satisfactory to him." In our case, the plaintiff produced a purchaser willing to purchase on terms agreeable to the defendant as outlined in the parties listing agreement. Mr. Peterson admitted that he agreed to those terms. They were not disputed, therefore, they need not have been included in the instruction.

Accordingly, we affirm the judgment.

All concur.