831 F.2d 1404
 45 Fair Empl.Prac.Cas. 169,
44 Empl. Prac. Dec. P 37,492,
45 Empl. Prac. Dec. P 37,649,
2 Indiv.Empl.Rts.Cas. 1175
Jimmie C. WASHBURN, Jr., Appellant,
v.
KANSAS CITY LIFE INSURANCE CO., Appellee.
 No. 86-2467.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 11, 1987.
Decided Oct. 28, 1987.
Rehearing and Rehearing En Banc Denied Dec. 10, 1987.
 
 Kelly L. McClelland, Liberty, Mo., for appellant.
 Jack B. Robertson, Kansas City, Mo., for appellee.
 Before ROSS, Circuit Judge,* BRIGHT, Senior Circuit Judge, and WOLLMAN, Circuit Judge.
 ROSS, Senior Circuit Judge.
 
 
 1
 Jimmie C. Washburn, Jr., appeals from a judgment entered on a jury verdict of breach of contract and of willful discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Secs. 621-34. Washburn also appeals the district court's dismissal of his fraud claim, and the court's conditional grant of a new trial on the breach of contract and age discrimination claims if the judgment for appellee is reversed. We affirm in part and reverse in part, and remand for further proceedings.
 
 FACTS
 
 2
 Washburn began his employment with Kansas City Life Insurance Co. (K.C. Life) in June, 1970 as a supervisor in the Kansas City Sales Agency, recruiting and training agents to sell life insurance for the company. Prior to that time, dating back to 1949, he was employed by other life insurance companies in sales, management and agent training programs. In his thirteen years with K.C. Life, Washburn worked in various management positions in the areas of insurance and pension sales, advanced underwriting and estate planning. His duties included, among other things, providing field agents with insurance analyses and planning advice and conducting training seminars and schools. Washburn received regular promotions throughout the years, and on April 1, 1982, he was named the Director of Estate Conservation. In this newly created position, Washburn was responsible for, among other things, increasing the life insurance sales of the company.
 
 
 3
 On October 27, 1982, K.C. Life issued a notice to all home office associates that it was offering a one-time early retirement option to K.C. Life associates who would be age 60 by December 31, 1982 with a minimum of ten years of service in the company. The early retirement option offered one full year's pay to any eligible employee taking the option. Washburn, who would be 60 in November, thus was eligible for the early retirement option.
 
 
 4
 That fall at a business luncheon, Washburn was asked by Dave Dysart, Executive Vice-President at K.C. Life, whether he was interested in taking the early retirement option. Washburn indicated that he was not. Nevertheless, Dysart continued to tell Washburn of the benefits of early retirement and strongly encouraged him to look into it.
 
 
 5
 Thereafter, Washburn asked his immediate supervisor, Glenn Cota, whether the company had any interest in his taking the early retirement offer. Cota responded that there was no such interest to his knowledge. Later in December of 1982, Washburn asked the same question of Donald Fromm, Vice-President in charge of the training area in which Washburn worked. Washburn testified that Fromm indicated to him at that time that his performance with the company was satisfactory and that K.C. Life was not attempting to force his retirement. After considering Fromm's comments and his available career options, Washburn later informed the personnel department that he would not be taking the early retirement option.
 
 
 6
 Four months later, on April 14, 1983, Washburn, age 60, was called to the office of Jim Davis, Regional Director of Sales and Washburn's supervisor since January 1, 1983. Also seated in the office was Michael DeMarea, Personnel Director at K.C. Life. At that time, Washburn was presented with a letter challenging certain expenses he had claimed during a business trip in March of 1983. Washburn explained to Davis that the expenses were legitimate and had been approved by his supervisors. Nonetheless, he offered to write a check for the entire amount to settle any questions about it. Washburn testified that Davis then responded to his offer of repayment, saying, "We don't want the [money]. We want you to retire." Washburn testified that Davis then proceeded to discuss the other contents of the letter, specifically, that Washburn had performed unsatisfactorily on two recent projects. Davis also criticized the creativity of Washburn's work. Washburn testified that he became incensed by Davis's comments and got up to leave, when Davis said, "Well, there may be an alternative to your firing and the alternative would be for you to take early retirement." Washburn testified that when he told Davis he wasn't interested in early retirement, Davis responded, "You weren't listening. Do you want to be fired or do you want to be interested in early retirement? And while you are thinking about it, Mr. DeMarea has some figures for you as to what we would do about early retirement." Mr. DeMarea then presented Washburn with some figures for early retirement which, Washburn believed, were considerably less than the full year's pay that was previously offered by the company as an inducement for early retirement. At the end of the meeting, Washburn was told to clean out his desk.
 
 
 7
 Washburn filed suit, alleging age discrimination, breach of employment contract, prima facie tort and fraud. At trial, K.C. Life asserted that Washburn was terminated for nondiscriminatory reasons, specifically, that (1) there had been a reduction in Washburn's workload due to estate tax law reform, (2) Washburn had unsatisfactorily performed in his new position as Director of Estate Conservation, and (3) Washburn had violated company policy by submitting unauthorized charges to his expense account. During the trial, the district court dismissed Washburn's fraud claim. The jury later returned verdicts in favor of Washburn on his age discrimination and breach of employment contract claims and awarded Washburn $82,245 on each count. The district court ruled, however, that Washburn could not recover the same items of damages under both counts and thus entered judgment for $82,245 actual damages. The district court later granted K.C. Life's motion for judgment notwithstanding the verdict (judgment n.o.v.) on both counts and conditionally granted a new trial if the judgment for K.C. Life is reversed. Washburn filed this appeal contesting the district court's entry of the judgment n.o.v. as to the age discrimination and breach of employment contract claims and conditional grant of a new trial on those claims and the dismissal of the fraud claim.[1]
 
 DISCUSSION
 
 8
 Judgment N.O.V. on Age Discrimination Claim
 
 
 9
 The standard for granting a judgment n.o.v. is well established in this circuit. In determining whether a party is entitled to a judgment notwithstanding an adverse jury verdict, the district court must view the evidence, together with all reasonable inferences to be drawn therefrom, in the light most favorable to the party who prevailed before the jury. Gilkerson v. Toastmaster, Inc., 770 F.2d 133, 136 (8th Cir.1985). Furthermore, like a directed verdict, a judgment n.o.v. should be granted only when all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party. Bell v. Gas Serv. Co., 778 F.2d 512, 514 (8th Cir.1985). Because the standards for appellate review of a judgment n.o.v. are the same as those which the district court must apply, Smith v. Monsanto Chem. Co., 770 F.2d 719, 722 (8th Cir.1985), cert. denied, 475 U.S. 1050, 106 S.Ct. 1273, 89 L.Ed.2d 581 (1986), this court must resolve factual disputes in favor of the appellant, assume all facts in his favor which the evidence tends to prove, and give him the benefit of all reasonable inferences. Bell, supra, 778 F.2d at 514-15. Keeping this standard in mind, the court must consider the nature of proof required under the ADEA and evaluate the evidence appellant presented at trial. Id. at 515.
 
 
 10
 The ADEA prohibits discrimination against any individual who is "at least 40 years of age but less than 70 years of age", 29 U.S.C. Sec. 631(a), with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. Sec. 623(a). Bethea v. Levi Strauss & Co., 827 F.2d 355, 357 (8th Cir.1987). In order to recover under the ADEA, the plaintiff has the initial burden of establishing a prima facie case of age discrimination, i.e., that he is within the protected group, that his performance met the employer's legitimate expectations, that he was terminated, and that afterwards the employer sought a replacement for the position. Bell, supra, 778 F.2d at 515. Once such a showing has been made, the burden of production shifts to the employer to produce evidence showing that its actions were taken for legitimate, nondiscriminatory reasons. If the employer makes such a showing, the plaintiff then has the ultimate burden of showing that the reasons offered by the employer are merely pretextual and that age was a determining factor in the discharge. Bethea, supra, at 357; Bell, supra, 778 F.2d at 515; Gilkerson, supra, 770 F.2d at 135.
 
 
 11
 As previously stated by the Supreme Court, the ultimate issue of fact in cases such as this is whether the employer intentionally discriminated against the employee. United States Postal Serv. v. Aikens, 460 U.S. 711, 714-15, 103 S.Ct. 1478, 1481-82, 75 L.Ed.2d 403 (1983); Gilkerson, supra, 770 F.2d at 135. Because the present case was fully tried on the merits, this court focuses its attention on the ultimate question presented and not on the adequacy of a party's showing at any particular stage of the analysis described in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Gilkerson, supra, 770 F.2d at 135. Therefore, we must simply study the record to determine whether the evidence is sufficient to support the jury's verdict of age discrimination. Bethea, supra, at 357; Gilkerson, supra, 770 F.2d at 135.
 
 
 12
 After the close of plaintiff's evidence, K.C. Life offered evidence of legitimate, nondiscriminatory reasons for discharging Washburn. Specifically, it claimed that Washburn's workload had considerably decreased due to estate tax law reform, that Washburn's performance as Director of Estate Conservation was unsatisfactory, and that Washburn had submitted unauthorized charges to his expense account in violation of company policy. Thereafter, plaintiff offered rebuttal evidence challenging K.C. Life's evidence of certain unauthorized expense account charges.
 
 
 13
 In granting judgment n.o.v. as to the jury's verdict of age discrimination, the district court concluded that Washburn did not meet his ultimate burden of showing that his age was a determining factor in his discharge, because he had failed to provide sufficient rebuttal evidence after defendant's showing of nondiscriminatory reasons for his discharge. The court concluded that because plaintiff's rebuttal evidence was insufficient, it was improper for the jury to infer that age was a determining factor in plaintiff's discharge.
 
 
 14
 Washburn argues that the district court erred in entering judgment n.o.v. in this instance because, while the three-stage order of proof described in McDonnell Douglas, supra, 411 U.S. at 802-05, 93 S.Ct. at 1824-25, is helpful in structuring the proof at trial, a plaintiff is not required to present rebuttal testimony following the defendant's showing of nondiscriminatory reasons for termination. He argues that his case-in-chief presented considerable evidence as to the quality of his job performance, the expense account charges in question, and the continuation of his duties by younger employees, that such evidence sufficiently rebutted defendant's reasons for discharge, and that the jury was entitled to infer from all the evidence that age was a determining factor in his discharge and that the reasons offered by K.C. Life were merely pretextual.
 
 
 15
 We agree. This court has previously held that simply because an employer has articulated legitimate, nondiscriminatory reasons for discharging an employee, that alone does not entitle it to a verdict in its favor or a judgment n.o.v. "The jury in its consideration of all the evidence could still find that the plaintiff's evidence established that the reasons articulated were pretextual." Gilkerson, supra, 770 F.2d at 135-36 (emphasis added). As the Supreme Court noted in Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 255 n. 10, 101 S.Ct. 1089, 1095 n. 10, 67 L.Ed.2d 207 (1981), "[i]ndeed, there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation." Thus, Washburn was not necessarily required to present additional rebuttal testimony following K.C. Life's showing of nondiscriminatory reasons for Washburn's termination. Based upon the verdict for Washburn, we believe that the jury adopted Washburn's version of the case and found the reasons offered by K.C. Life to be pretextual and its actions to be discriminatory.
 
 
 16
 We have carefully examined the record before us and conclude that there was sufficient evidence to support the jury's verdict on the age discrimination claim. Specifically, the jury had evidence before it that 1) Washburn had a good performance record in his thirteen years at K.C. Life, without a single deficiency report in his personnel file; 2) Glenn Cota, Washburn's immediate supervisor for the last three to four years, rated Washburn's performance six months prior to his termination as competent in all areas, and distinguished and commendable in other areas, and indicated that he was completely satisfied with Washburn's performance at the time of termination; 3) Mr. Cota was not previously consulted by Mr. Davis concerning (a) problems with Washburn's performance or expense account, (b) a diminished need for Washburn's services, or (c) plans to terminate Washburn; 4) Washburn was not given prior notice of any major deficiencies in his performance, nor the opportunity to correct any such deficiencies, as was typically provided under K.C. Life's policy of progressive discipline; 5) the expense account charges in dispute were fully authorized through three levels of supervisors and were in fact reimbursed to Washburn; 6) Washburn's offer of repayment of the expense charges was rejected by Mr. Davis saying, "We don't want the [money]. We want you to retire."; 7) Washburn was given the option of retiring or being terminated; and 8) Washburn's functions continued and were performed by younger employees following his termination. The jury also had evidence that K.C. Life offered Washburn a special package of benefits at the time of his termination, which resembled the early retirement offer previously made by the company, even though K.C. Life was "dissatisfied" with Washburn's performance and conduct.
 
 
 17
 Based upon all the evidence, we find that the jury could reasonably believe that age was a determining factor in K.C. Life's decision to terminate Washburn. We therefore conclude that the district court erred in granting K.C. Life's motion for judgment n.o.v. as to the age discrimination claim.
 
 Conditional Grant of New Trial
 
 18
 Next, Washburn argues that the district court abused its discretion in conditionally granting K.C. Life's alternative motion for new trial, and that the jury's verdict should be reinstated. We first note that the district court's authority to grant or deny a new trial is a matter of discretion which will not be reversed on appeal absent a strong showing of clear abuse. Leichihman v. Pickwick Int'l, 814 F.2d 1263, 1267-68 (8th Cir.1987); Craft v. Metromedia, Inc., 766 F.2d 1205, 1221 (8th Cir.1985), cert. denied, 475 U.S. 1058, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986). On a motion for new trial, the district court has wider, though not unlimited, latitude than when considering a judgment n.o.v. Day v. Amax, Inc., 701 F.2d 1258, 1262-63 (8th Cir.1983), (quoting Fireman's Fund Ins. Co. v. Aalco Wrecking Co., 466 F.2d 179, 186 (8th Cir.1972), cert. denied, 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592 (1973)). Specifically, the court is not required to give the prevailing party the benefit of every favorable inference and it may consider the weight of the evidence, and set aside the verdict, in order to prevent a miscarriage of justice. Id.
 
 
 19
 Notwithstanding this broad latitude, the court is not free to set aside a jury verdict and to grant a new trial merely because it believes the jury could have drawn different inferences or that another result would be more reasonable. Fireman's Fund, supra, 466 F.2d at 186-87. The court must feel that the jury clearly reached a seriously erroneous result, and further, must state its reasons for concluding that the verdict is against the great weight of the evidence. Leichihman, supra, 814 F.2d at 1267. This court has also previously recognized that a new trial should not be granted where there is no valid purpose for submitting the case to another jury, where the evidence and legal principles are simple enough so as not to confuse the jury, or where the evidence is such that reasonable men may differ. Fireman's Fund, supra, 466 F.2d at 186-87.
 
 
 20
 In the present case, the court stated that the plaintiff's evidence failed to provide any reasonable basis to support the jury's verdict, and concluded that, "[t]he only way the jury in this case could have reached the conclusion that age was a determining factor was to have inferred that conclusion from the mere facts of plaintiff's age and thus his membership in the age group protected by the statute."
 
 
 21
 Having thoroughly reviewed the record, we disagree with the district court that a miscarriage of justice had taken place by virtue of the jury's verdict. The district court's conclusion that there was no reasonable basis to support the jury's verdict of age discrimination, other than the plaintiff's age and membership in the protected group, is wholly unsupported by the record. The evidence was clearly such that reasonable men may differ as to the result, and therefore, the determination should have been left for the jury to decide. We also believe that the district court's erroneous view of the parties' respective burdens in this case largely formed the basis for the court's conditional grant of new trial. For these reasons, we conclude that the district court clearly abused its discretion in conditionally granting K.C. Life's motion for new trial on the age discrimination claim. The district court, therefore, is instructed to reinstate the jury's verdict and award of $82,245 for actual damages on the age discrimination claim.
 
 Willfulness Instruction
 
 22
 Related to the age discrimination claim is Washburn's argument that the district court erred in refusing to instruct the jury on the issue of willfulness. Under the ADEA, a plaintiff may seek "liquidated" or double damages, which are punitive in nature, in cases of "willful" violations. 29 U.S.C. Sec. 626(b); Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 125, 105 S.Ct. 613, 624, 83 L.Ed.2d 523 (1985). The Supreme Court has held that a violation is "willful" if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." Id. at 128, 105 S.Ct. at 625 (quoting Air Line Pilots Ass'n v. Trans World Airlines, Inc., 713 F.2d 940, 956 (2d Cir.1983)). The court has also specifically rejected the argument that a violation of the ADEA is "willful" "if the employer simply knew of the potential applicability of the [Act]," because this standard would, in almost every case, result in an award of double damages. Id. 469 U.S. at 127-28, 105 S.Ct. at 625. The Supreme Court noted that such a result would frustrate the intent of the Act, because "Congress intended a two-tiered liability scheme." Id. at 128, 105 S.Ct. at 625.
 
 
 23
 K.C. Life contends that the evidence in this case is insufficient under the Thurston test to support a finding that it willfully violated the ADEA, thus there was no basis for an award of liquidated damages. Washburn argues to the contrary that the evidence is sufficient to support a finding of willful violation of the Act, and that the jury was entitled to decide the issue of willfulness in this instance.
 
 
 24
 Based upon a thorough review of the record, it is our firm belief that willfulness was not sufficiently established under the Thurston standard and we hold as a matter of law that the trial court did not err in refusing to submit this issue to the jury.
 
 Breach of Employment Contract Claim
 
 25
 Washburn also urges this court to reverse the district court's entry of judgment n.o.v. and conditional grant of new trial as to his breach of employment contract claim. Specifically, he urges the court to reinstate the jury's verdict and its award of $82,245 for actual damages. K.C. Life challenges the plaintiff's claim that he may recover the same damages under both his breach of contract and age discrimination theories of liability.
 
 
 26
 We agree with the district court and the position taken by K.C. Life that Washburn may not recover the same items of actual damages under both counts. It is clear that Washburn sought to recover, under alternative theories of liability, damages flowing essentially from a single transaction, i.e., his termination from K.C. Life. In this type of situation, "a plaintiff is not entitled to a separate compensatory damage award under each legal theory. On the contrary, he is entitled only to one compensatory damage award if liability is found on any or all of the theories involved." Greenwood Ranches, Inc. v. Skie Constr. Co., 629 F.2d 518, 521 (8th Cir.1980). Based upon the foregoing, we must conclude that Washburn may recover only once under his alternative theories of liability. Having already determined, supra, that Washburn is entitled to an award of $82,245 on his claim of age discrimination, the court finds it unnecessary to reach the merits of Washburn's arguments with regard to his breach of contract claim.
 
 Fraud Claim
 
 27
 We now address Washburn's claims that the district court erred in dismissing his claim of common law fraud and in denying his motion for new trial. Washburn's claim of fraud is premised upon a conversation he had with Donald Fromm, a Vice-President of K.C. Life, in December of 1982 concerning the company's early retirement option. Washburn testified that when he asked Fromm whether the company had an interest in him taking the early retirement option, Fromm indicated to him that the company had no such interest and that the company was satisfied with his work. Fromm later testified, however, that he indicated to Washburn at that time that he had recently been dissatisfied with his work performance. Washburn also testified that he relied on Fromm's statements in making his final decision not to take early retirement. At the close of Washburn's evidence, the district court granted K.C. Life's motion for a directed verdict and dismissed the claim on the grounds that there was a failure of proof of a submissible case of common law fraud, citing Craft v. Metromedia, Inc., 766 F.2d 1205 (8th Cir.1985), cert. denied, 475 U.S. 1058, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986).
 
 
 28
 In determining whether the district court erred in dismissing the fraud claim, we must first consider whether Washburn's evidence was sufficient to establish a submissible case of fraud. Under Missouri law, the elements of common law fraud are: "(1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, (9) and his consequent and proximate injury." Heitman v. Brown Group, Inc., 638 S.W.2d 316, 319 (Mo.Ct.App.1982); Ackmann v. Keeney-Toelle Real Estate Co., 401 S.W.2d 483, 488 (Mo.1966). Each of these elements must be established to make a submissible case of fraud, and failure to establish any one is fatal to recovery. Wampler v. Mueller, 623 S.W.2d 27, 28 (Mo.Ct.App.1981); Strebler v. Rixman, 616 S.W.2d 876, 878 (Mo.Ct.App.1981). "Fraud may be established by circumstantial evidence, Martin v. Brune, 631 S.W.2d 77, 80 (Mo.Ct.App.1982); however, it may not be presumed, and a party's case will fail if he can show only facts and circumstances which are equally consistent with honesty and good faith. Macon-Atlanta State Bank v. Gall, 666 S.W.2d 934, 941 (Mo.Ct.App.1984)." Craft, supra, 766 F.2d at 1218.
 
 
 29
 As we have previously noted, the standard for granting a directed verdict is the same as that for a judgment n.o.v. Specifically, a directed verdict should be granted "only when all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party." Tribble v. Westinghouse Elec. Corp., 669 F.2d 1193, 1195 (8th Cir.1982), cert. denied, 460 U.S. 1080, 103 S.Ct. 1767, 76 L.Ed.2d 342 (1983) (quoting Smith v. Hussmann Refrig. Co., 619 F.2d 1229, 1235 (8th Cir.1980)). Also, the standards of appellate review are the same as those which the district court must apply, Monsanto, supra, 770 F.2d at 722, thus we must resolve all factual disputes in favor of the appellant and give him the benefit of all reasonable inferences. Bell, supra, 778 F.2d at 514-15.
 
 
 30
 In the present case, the district court dismissed the fraud claim based upon this court's reasoning in Craft, supra, 776 F.2d at 1205. In Craft, a female television news anchor was demoted from her position as news co-anchor to reporter by her employer, KMBC-TV in Kansas City, Missouri, after a survey indicated that the audience perceived her as unattractive. As a result, Craft filed suit, alleging fraudulent misrepresentations, as well as violations of Title VII, 42 U.S.C. Sec. 2000e et. seq. (1982), and the Equal Pay Act, 29 U.S.C. Sec. 206(d) (1982). With respect to her fraud claim, Craft argued that the station misrepresented its intentions as to changing her appearance in order to persuade her to accept the anchor job. The jury later returned a verdict in her favor on that claim. This court reversed the verdict, however, on the grounds that Craft had failed to prove that the station's statements of present intent were false at the time they were made, and held that Craft had failed to establish a submissible case of fraud. Id. at 1221. In its analysis of the fraud claim, the court noted,
 
 
 31
 The critical element in a fraud case based on a statement of present intent is proof that the speaker at the time of utterance actually did not intend to perform consistently with his words; absent such an inconsistent intent there is no misrepresentation of fact or state of mind but only a breach of promise or failure to perform. * * * It is not enough if for any reason, good or bad, the speaker changes his mind and fails or refuses to carry his expressed intention into effect.
 
 
 32
 Id. at 1219 (citations omitted).
 
 
 33
 Washburn argues that Fromm knew at the time he made his statements to Washburn (i.e., that Washburn was satisfactorily performing his job functions and that the company had no interest in forcing his retirement) that such statements were in fact false and that they would be relied upon by Washburn in refusing to take the early retirement option. As evidence of Fromm's knowledge of the falsity of such statements, Washburn points to the fact that Fromm later testified at trial that he told Washburn that he was not satisfactorily performing his duties.
 
 
 34
 Having carefully reviewed the testimony of Fromm and the entire record in the light most favorable to Washburn and giving him the benefit of all favorable inferences, we must conclude that there is insufficient evidence for a reasonable jury to have found that Fromm had knowledge at the time the statements were made that the company was interested in Washburn's taking the early retirement option. The evidence is also insufficient to support any finding that K.C. Life in fact had any actual plans to force Washburn's retirement at the time Fromm's statements were made to Washburn. Without proof that Fromm's statements of present intent were false when made, the district court properly concluded that Washburn had failed to establish a submissible claim of fraud. Based on the foregoing, we affirm the district court's entry of directed verdict and dismissal of Washburn's claim of common law fraud.
 
 
 35
 With regard to the district court's denial of Washburn's motion for new trial on the issue of fraud, we feel that we need not reach Washburn's arguments for essentially the same reasons we have set forth above. We find no abuse of discretion by the trial court as to this issue.
 
 Equitable Relief
 
 36
 Washburn's final argument is that the district court erred in denying his motion for equitable relief and for an order to alter or amend the judgment. In addition to compensatory damages awarded by the jury on the age discrimination claim, Washburn seeks various other relief provided by the ADEA, 29 U.S.C. Sec. 626(c), including attorney's fees, and pre- and post-judgment interest, and costs under 28 U.S.C. Sec. 1961. In light of the fact that we reverse the district court's ruling as to the age discrimination claim and also since Washburn has not had the opportunity to present evidence justifying the additional remedies, we reverse the district court's order denying equitable relief and for an order to alter or amend the judgment and remand the case for an evidentiary hearing on the claim for equitable relief, including interest, attorney's fees and costs.
 
 
 37
 Accordingly, we reverse in part and affirm in part, and remand for further proceedings.
 
 
 38
 BRIGHT, Senior Circuit Judge, concurring in part and dissenting in part.
 
 
 39
 I concur in the excellent opinion of Judge Ross but dissent only on the issue of whether the jury should have determined whether the defendant Kansas City Life acted willfully in violating the ADEA.
 
 
 40
 In my view, the facts in this case appear so egregious that a jury could award double damages to the plaintiff for the employer's knowing and reckless conduct in disregard of the ADEA when the employer discharged Mr. Washburn.
 
 
 41
 I would send the case back solely for a jury determination of this issue.
 
 
 
 *
 The Honorable Donald R. Ross assumed senior status on June 13, 1987
 
 
 [1]
 Washburn's claim for prima facie tort was not pursued at trial and is not raised as an issue on appeal