**DIVERSIFIED GRAPHICS, LTD., a corporation, Appellee,**

v.

**Ray J. GROVES, an individual, as a representative of a class comprised of all partners in the general partnership doing business as Ernst & Whinney, Appellant.**

No. 87–2408.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 21, 1988.

Decided Feb. 23, 1989.

Rehearing Denied March 31, 1989.

---

John Hennelly, St. Louis, Mo., for appellant.

Peter Sadowski, St. Louis, Mo., for appellee.

Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and FAGG, Circuit Judge.

LAY, Chief Judge.

This is a diversity of citizenship case brought in federal court under 28 U.S.C. § 1332 (1982). Diversified Graphics, Ltd. was awarded money damages on a negligence claim and for breach of fiduciary duty.[1] The suit was brought against Ray J. Groves, chairman of Ernst & Whinney, a partnership that engages in the practice of public accounting and related fields. Groves represents the class of partners; he now appeals. We affirm in part and reverse in part.

## I. Background

Diversified Graphics, Ltd. (D.G.) is a screen printer and apparel manufacturer. It hired Ernst & Whinney (E & W) to assist it in obtaining a computer system to fit its data processing needs. The parties dispute the extent to which E & W was involved in the selection and implementation stages of the new system.

E & W claims that it was retained for the limited purposes of evaluating D.G.'s needs, preparing a "Request for Proposal" to distribute to potential vendors of computer hardware and software, and to make a recommendation of a vendor. After it recommended Richter Management Services, Inc., E & W claims that it had no subsequent involvement in the project except to provide D.G. with a representative, William Byrne, who acted in a very limited advisory role. E & W contends that the subsequent difficulties in the implementation of the new computer system were due to unwise decisions made by D.G.'s management.

D.G. maintains that it had a longstanding relationship with E & W during which the former developed great trust and reliance upon the latter's services. Because D.G. lacked computer expertise, it decided to entrust E & W with the selection and implementation of an in-house computer data processing system. According to D.G., E & W had promised to locate a "turnkey"

---

1. The verdict of the jury awarded $150,000 on the negligence claim and assessed fault as 55% to defendant and 45% to plaintiff; the judgment entered was $82,500. The jury also awarded $50,000 on the breach of fiduciary duty claim. The jury found in favor of the defendant on the breach of contract claim. There was no appeal on that judgment.

system which would be fully operational without need of extensive employee training. D.G. instead received a system that was difficult to operate and failed to adequately meet its needs.

D.G. filed this action asserting claims of negligence, breach of fiduciary duty, and breach of contract. At trial, the jury found in favor of D.G. on its negligence and breach of fiduciary duty claims and against D.G. on its breach of contract claim. On appeal, E & W argues that the district court[2] improperly defined the conduct that gives rise to a breach of a fiduciary duty, applied an incorrect standard of care, and permitted a duplicative damage award. E & W also asserts that D.G. failed to make an adequate showing of the causation and damage portions of its case.

## II.  Discussion

### A.  *Duplicative Damages*

At trial, D.G. presented three theories upon which to base recovery of damages resulting from the purchase and implementation of its data processing system. The parties were in agreement throughout the trial "[t]hat while plaintiff's case is brought upon three theories, only one recovery can be permitted." Trial Transcript, vol. 7, at 5. Furthermore, the jury was instructed that D.G., while perhaps "entitled to a verdict under any of its theories," was "only entitled to one recovery." Jury Instruction No. 16. The jury, however, returned a verdict including two separate damage awards based on two separate theories.

In instances where a party's claims are simply alternative theories seeking relief for the same injury, that party " 'is not entitled to a separate compensatory damage award under each legal theory. On the contrary, he is entitled only to one compensatory damage award if liability is found on any or all of the theories involved.' " *Washburn v. Kansas City Life Ins. Co.*, 831 F.2d 1404, 1410–11 (8th Cir. 1987) (quoting *Greenwood Ranches, Inc. v. Skie Constr. Co.*, 629 F.2d 518, 521 (8th Cir.1980)). In this case, D.G. sought relief for a single injury: the harm caused by selecting and implementing an inadequate computerized data processing system. Regardless of whether the harm was the result of negligence or breach of fiduciary duty or a combination of both, there is only a single injury and there may only be a single recovery. *Bold v. Simpson*, 802 F.2d 314, 321 (8th Cir.1986). We therefore find that the district court erred in awarding D.G. the aggregate of the jury award.[3]

### B.  *Negligence*

E & W argues that it should have been held to an ordinary, rather than a professional, standard of care. E & W further contends that the district court erred in denying its motion for a directed verdict on this claim because D.G. failed to offer expert testimony as to the appropriate standard and whether it had been breached in this case.[4]

A breach of a professional standard is more exacting and difficult to prove than breach of ordinary care. Accordingly, it would appear that a finding that E & W

2. The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri.

3. D.G. argues that the jury intended its verdicts on the various claims to be cumulated. The difficulty with this argument is that there is nothing in the record upon which such an imposition of damages could rationally be based. *Greenwood Ranches, Inc. v. Skie Constr. Co.*, 629 F.2d at 522 n. 9.

4. D.G. contends that E & W actually failed to raise this issue in its motions for directed verdict, judgment n.o.v., and new trial. Consequently, D.G. urges the court to limit its review to the "plain error" doctrine. *Karjala v. Johns-*

*Manville Prod. Corp.*, 523 F.2d 155, 157 (8th Cir.1975). E & W argues that its general challenges to whether D.G.'s negligence claim is submissible, contained in E & W's motions for directed verdict and judgment n.o.v., were sufficient to preserve the issue relating to the expert testimony. E & W asserts that a motion for directed verdict need not detail all evidentiary deficiencies in D.G.'s case. *Halsell v. Kimberly-Clark Corp.*, 683 F.2d 285, 293–95 (8th Cir.1982). While it is a close question, we find that E & W has challenged the sufficiency of evidence to support D.G.'s claim and therefore has sufficiently preserved this issue for appeal.

breached the former standard would necessarily encompass a finding that it failed to exercise ordinary care. In any event, D.G. presented sufficient evidence to support the jury's finding of lack of professional care.

D.G.'s theory for recovery based on negligence encompasses the notion of a consultant-client relationship and therefore the existence of a professional standard of care: E & W failed to act reasonably in light of its superior knowledge and expertise in the area of computer systems. *LeSueur Creamery, Inc. v. Haskon, Inc.*, 660 F.2d 342, 348 (8th Cir.1981) ("Professional persons *and* those engaged in any work or trade requiring special skill must possess a minimum of special knowledge and ability as well as exercise reasonable care.") (emphasis original). *See also* Restatement (Second) of Torts § 289 comment m (1965). D.G. claims that it retained E & W as a consultant during its purchase and implementation of an in-house data processing system. It is implicit in alleging the existence of an agreement that D.G. anticipated that E & W possessed superior knowledge in this area; D.G. contracted for the benefit of E & W's expertise. Based on D.G.'s allegations, E & W was properly held to a professional standard of care.

The degree of skill and care that may be required of a professional is a question of fact for the jury. *See Bartak v. Bell–Galvardt & Wells, Inc.*, 629 F.2d 523, 529 (8th Cir.1980). On review, the evidence on the breach of the professional standard of care must be considered in the light most favorable to the plaintiff, according it all of the reasonable inferences and disregarding all of the defendant's evidence except as it supports the plaintiff's case. *McIntyre v. Everest & Jennings, Inc.*, 575 F.2d 155, 158 (8th Cir.1978); *Meridian Interests, Inc. v. J.A. Peterson Enters., Inc.*, 693 S.W.2d 179, 182 (Mo.App.1985). In the instant case, E & W argues that D.G. did not make a submissible case on negligence because D.G.'s expert, Norton Lee Hoffman, failed to both state the applicable professional standard and explain how E & W had violated that standard.

Upon review of Hoffman's testimony, we must agree with E & W that Hoffman could have stated the professional standard of care required of a computer systems consultant in a more straightforward manner. Much of his testimony recited only his personal opinion. Hoffman's testimony nonetheless contained significant discussion of the applicable professional standard of care and E & W's actions in relation to that standard. Furthermore, we find that there was substantial evidence elsewhere in the record regarding the applicable standards of a professional consultant.

The evidence contains E & W's Guidelines to Practice which incorporates the Management Advisory Services Practice Standards which were adopted by the American Institute of Certified Public Accountants, Inc. (AICPA Standards). The AICPA Standards require that "due professional care" is to be exercised in providing management advisory services. These standards in part generally provide:

In performing management advisory services, a practitioner must act with integrity and objectivity and be independent in mental attitude.

Engagements are to be performed by practitioners having competence in the analytical approach and process, and in the technical subject matter under consideration.

Due professional care is to be exercised in the performance of a management advisory services engagement.

Before accepting an engagement, a practitioner is to notify the client of any reservations he has regarding anticipated benefits.

Before undertaking an engagement, a practitioner is to inform his client of all significant matters related to the engagement.

Engagements are to be adequately planned, supervised, and controlled.

Sufficient relevant data is to be obtained, documented, and evaluated in developing conclusions and recommendations.

All significant matters relating to the results of the engagement are to be communicated to the client.

AICPA Standards Nos. 1–8. The expert witnesses of the plaintiff as well as those called by the defendant establish sufficient evidence from which the jury could find that the defendant did not meet the above-stated standards.

The record reflects that D.G. had determined that it required a "turnkey" computer system that would fully perform all of its data processing in-house. The term "turnkey" is intended to describe a self-sufficient system which the purchaser need only "turn the key" to commence operation. The record makes clear that the purchaser should not have to hire programmers and that current employees should not have to undergo extensive training to be able to operate the system. The evidence shows that to procure this type of customized and fully operational system, great care must be taken to carefully detail a business' needs and to properly develop specifications for the computer system. Potential vendors must be carefully scrutinized to discover all of the inadequacies of their data processing systems. Once a vender is chosen, proper implementation is imperative to ensure that the purchaser truly need only "turn the key" to commence full operation of the system. A fundamental part of implementation involves testing the system through parallel data processing operation. Finally, the existence of adequate documentation regarding the operation of the system is crucial once the system is up and running. As previously stated, employees will have had only minimal training and will depend heavily on the instructions for operation. Moreover, documentation is particularly important because this type of system is highly customized and standard instruction sources will have only limited value.

Thus, the record reflects sufficient information from which a jury could determine the applicable professional standard of care and upon which the jury could conclude that E & W's conduct fell short of adhering to that standard. The record also contains sufficient evidence to support the jury's finding that the inadequacies of the data processing system caused D.G. to incur considerable expense necessary for modifi-cations, employee training, and additional staffing and consultation. We therefore find that D.G.'s claim for damages was properly submitted to the jury. As stated by the Supreme Court of Missouri in *Steele v. Woods*, 327 S.W.2d 187, 195 (Mo.1959):

> It is sufficient if there is substantial evidence which shows that the injury is a natural and probable consequence of the negligent act or omission. And this can be determined by reasonable inference from proven facts or circumstantial evidence. Where the logical conclusion from the evidence is that if certain things were properly done certain results would not have occurred, and they *did* occur, the question of causal connection is sufficient to go to the jury.

(Emphasis original and footnotes omitted). Finally, E & W has asserted that D.G. failed to provide adequate proof of damages. We have reviewed the record and find that there is sufficient evidence contained therein to support the reasonableness and the amount of the jury's verdict. We therefore sustain the judgment awarded to D.G. for its negligence claim.

In light of our ruling that the judgment entry was duplicative and the fact that the jury's negligence award was higher than its award for breach of fiduciary duty, we find it unnecessary to address E & W's claim regarding the propriety of the submission of the claim for breach of fiduciary duty.

We therefore affirm the judgment entered by the district court insofar as it awards D.G. $82,500 for its negligence claim and vacate the judgment awarding D.G. $50,000 for its breach of fiduciary duty claim.

AFFIRMED IN PART AND REVERSED IN PART.